BERNARD v. CITY OF ST. LOUIS.

1. MUNICIPAL CORPORATIONS—RIGHT TO PERCOLATING WATERS NOT ABSOLUTE.

    While a municipal corporation, seeking water for the use of its inhabitants, is entitled to a reasonable use of the percolating waters underlying its land, its right is a qualified one, and merely because it is a municipal corporation it may not interfere with the reasonable rights of adjoining landowners.

The question of the right of a municipal corporation in respect to percolating waters is discussed in a note in L. R. A. 1917F, 691.

2. SAME—WATERS AND WATERCOURSES — INJUNCTION — RIGHT TO
   REASONABLE USE OF PERCOLATING WATERS—DAMAGES.

> On appeal from an injunction restraining defendant
> municipal corporation from operating its wells to the
> detriment of plaintiffs, who are adjoining landowners,
> where it does not appear to the satisfaction of this court
> that, if defendant makes a reasonable use of the per-
> colating waters in its wells and the plaintiffs do not
> permit it to go to waste, there will not be an ample supply
> for the needs of both most of the time, the decree will
> be modified so as to require defendant not to interfere
> with an adequate supply of water for plaintiffs' reasonable
> use, the waste to be conserved by them and they to be
> compensated for any damages they may sustain by reason
> of having to install pumping machinery or other appli-
> ances.

Appeal from Gratiot; Moynihan (Joseph A.), J.,
presiding.    Submitted June 14, 1922.    (Docket No.
84.)    Decided October 2, 1922.

Bill by Fred H. Bernard and others against the city
of St. Louis to enjoin the operation of certain wells.
From a decree for plaintiffs, defendant appeals.    Modi-
fied.

*C. W. Giddings* and *O. G. Tuttle* (*Arthur Brown*, of
counsel), for plaintiffs.

*Romaine Clark* and *Searl & Searl*, for defendant.

MOORE, J.    The plaintiffs filed their bill of com-
plaint against the defendant and alleged among other
things that they are holders of certain land which
they obtained through a chain of title from Henry L.
Holcomb; that upon this land there is the premises
known as the Park hotel which was built some 50
years ago as a sanitarium; that part of the treatment
consisted in applying the water from a certain mineral
spring which is alleged to have curative properties in

the treatment of diseases. It is claimed that the spring in question is what is known as a flowing well and has been flowing upwards of 50 years and flows directly into a pumping room of the hotel proper, where it is lifted by a force pump to a storage tank on the roof of the hotel, there to be distributed to the various rooms of the hostelry for the need of patients and guests. The proofs disclose the fact that the city of St. Louis for many years obtained its water supply from Pine river which then furnished good water, but with the increase in population the stream became polluted so that at an election held by the city a bond issue was authorized and plans made for sinking wells and purchasing the necessary machinery to equip a waterworks for the city. Wells were sunk on land belonging to the municipality adjacent to the sanitarium and water was struck which flowed in considerable quantities, enough to satisfy the engineers of the city that the needs of the city would be amply met from the five wells sunk. It is further shown that the water department immediately built a new reservoir and attached pumps to the city's wells and began to pump its supplies. A large fire occurred in the city of St. Louis and there was insufficient water supply from the wells so that the old lines to the Pine river were re-opened and water pumped from the river; that upon a threatened resumption of the pumping of the wells the plaintiffs in this suit filed their bill of complaint praying for an injunction restraining the city from operating its wells to the detriment of their own supply and for other relief. The case was heard at great length in open court and the chancellor made a personal inspection of the plant. He was of the opinion that the plaintiffs were entitled to injunctive relief and made a decree from which we quote as follows:

"*First.* That said defendant, the city of St. Louis, and its officers, counsellors, attorneys, employees and agents, absolutely desist and refrain from pumping from its wells, and any other wells, to such an extent as to diminish the flow or the pressure of the water flowing from the plaintiff's well, known as the Magnetic Mineral Spring.

"*Second.* That said defendant and its officers, counsellors, attorneys, employees and agents absolutely desist and refrain from interfering with, changing or molesting in any manner the pipe line and equipment used in connection therewith or the flow of the water of the magnetic mineral well to plaintiffs' hotel and sanitarium through its said pipe line and equipment as it was at the time of filing the bill of complaint in this case on December 19, 1921; and at the time of hearing thereon."

The case is brought into this court by appeal.

Defendant's claim is stated by counsel as follows:

"(1) That the plaintiffs are not entitled to any relief in a court of equity and are not entitled to an injunction.

"(2) That plaintiffs, by reason of laches, delay and acquiescence and by their conduct are estopped from claiming relief by injunction.

"(3) That plaintiffs are not the owners of the Andrews well or the flow thereof and had never acquired by grant or prescription or otherwise any right, title or easement in or to the percolating waters or to have the water from the Andrews well flow through the Andrews pipe line to the boilerhouse.

"(4) That the threatened injury and damage claimed by plaintiffs is infinitesimal compared to the great and irreparable injury which will be suffered by the defendant and its inhabitants by the continuance of said injunction.

"(5) That if said injunction is continued, great and irreparable injury will result to said defendant, its inhabitants, and that the health and lives of its inhabitants will be endangered.

"(6) That the bill does not allege and the proofs do not show that any irreparable injury will result,

to plaintiffs by reason of the pumping of the city wells as proposed.

"(7) That defendant does not desire nor intend to injure plaintiffs or their business and that its proposed pumping amounts to a reasonable use of its share of the waters.

"(8) That plaintiffs are using the water from the Andrews well for commercial purposes on other lands and are not entitled to restrain defendant from a reasonable use of the waters underlying the lands owned by it within the city limits for the purpose of providing pure water for the benefit of its inhabitants for domestic purposes and at no profit.

"(9) That plaintiffs are making an illegal and unreasonable use of the waters by reason of allowing large quantities thereof to go to waste.

"(10) That if plaintiffs have any remedy it is by an action at law and not in equity for an injunction."

We shall not discuss the claim of counsel under heads 1 and 2, further than to say that the record clearly shows that those contentions are not well taken.

The claims of counsel under heads 4, 5 and 6 would seem to be inconsistent with the claim under head 7 but whether they are or not we think the testimony fairly shows that if defendant resumes pumping operations to the extent it did before the fire, the plaintiffs will have to make provision at considerable expense for the pumping of water to a greater height than it would otherwise be required to do. We are not satisfied, however, that if the city makes a reasonable use of the percolating waters and the plaintiffs do not permit it to go to waste that there will not nearly all of the time be an ample supply for the needs of both. If there should not be then the plaintiffs should not be deprived of a supply of water sufficient for their reasonable use without compensation, nor should they be required to install new machinery without compensation.

The precise question here presented has never been

before this court, and, so far as we know, before any court of last resort.   Some of the principles involved were considered and discussed in *Stock* v. *City of Hillsdale,* 155 Mich. 375, and in *Schenk* v. *City of Ann Arbor,* 196 Mich. 75 (L. R. A. 1917F, 684, Ann. Cas. 1918E, 267).

In 27 R. C. L. at p. 1182, it is said:

"Injunctions involving rights to percolating waters should, however, be granted, if at all, only upon the clearest showing that there is immediate danger of irreparable and substantial injury and that the diversion complained of is the real cause.   Injunctions involving rights to percolating waters will be refused if the complainant has stood by while the development was made for public use and has suffered it to proceed at large expenditure to successful operation, having reasonable cause to believe it would affect his own water supply; and if a party makes no use of the water on his own land, or elsewhere, he should not be allowed to enjoin its use by another who draws it out or intercepts it, or to whom it may go by percolation, although perhaps he may have the right to a decree settling his right to use it when necessary on his own land, if a proper case is made.   When the rights of the public are involved in a suit to enjoin the abstraction of subterranean waters for use at a distance, and the court can arrive in terms of money at the loss which local landowners have sustained, an absolute injunction will not be granted, but the proceeding will be regarded as one to secure compensation to the local owners for their injury."

In the case of *Schenk* v. *City of Ann Arbor, supra,* there is a review of a great many authorities from which quotations were freely made.

We quote briefly from the opinion:

"I have said that, in view of the circumstances, the right of defendant to make use of the water is a qualified right.   It is qualified by this rule of reasonable user, a rule quite in harmony with the provisions of Act No. 190, Pub. Acts 1889, and Act No. 107, Pub. Acts 1905.   There is no apparent reason for saying

that, because defendant is a municipal corporation, seeking water for the inhabitants of the city, it may there do what a private owner of the land may not do. The city is a private owner of this land, and the furnishing of water to its inhabitants is its private business. It is imperative that the people of the city have water; it is not imperative that they secure it at the expense of those owning lands adjoining lands owned by the city.

"It does not follow that the city may not reasonably make use, for the purpose intended, of a large volume of water from this land. I have stated the rule by which the rights of the city and other landowners must be determined. Manifestly the city must take the chances of experience. The decree will not be reversed, and an injunction granted to plaintiff, although it should be so modified as to permit plaintiff hereafter to apply to the court, upon the footing of the decree and upon new matter, for equitable relief. The court cannot know what action the defendant city will take in the premises. It is not now harming the plaintiff, and the decree secures to him compensation for such actual injury as he is shown to have suffered."

In *Stock* v. *City of Hillsdale, supra,* it was said:

"It is undeniable, however, that the complainant's rights were infringed by diverting this water, and that the value of his property—the mill at Hillsdale—was to some extent affected by this fact, and we think that the rights of complainant may well be adjudged in this case. The complainant's damages should be awarded in gross, even though he has not shown himself entitled to a writ of injunction. See *Blake* v. *Cornwell,* 65 Mich. 467, and *Allen* v. *Electric Co.,* 144 Mich. 370 (115 Am. St. Rep. 453)."

In the instant case we think the decree should be modified so as to require defendant not to interfere with an adequate supply of water for the plaintiffs' reasonable use, the water to be conserved by the plaintiffs and they to be compensated for any damage they may sustain by reason of having to install pumping machinery or other appliances.

The case will be remanded to take further proofs to determine the amount of damages. A decree may be prepared in accordance with this opinion. Neither party will recover costs.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.