HART *v.* D'AGOSTINI.

1. WATERS AND WATER COURSES—SUBTERRANEAN WATER.
   Subterranean water, which is no respecter of property lines, is often impossible to extract without water from adjoining lands percolating across the property line.

2. SAME—SUBTERRANEAN WATER—RIGHTS OF LAND OWNER.
   The right to enjoyment of the subterranean water beneath a person's land cannot be stated in terms of an absolute right in our increasingly complex and crowded society, where people, of necessity interfere with each other to a greater or less extent.

3. SAME—SUBTERRANEAN WATER—LIABILITY FOR INTERFERENCE.
   The liability for interference with the subterranean water supply of a neighbor depends upon whether the causative activity (1) if intentional, was unreasonable or (2) if unintentional, was negligent.

4. SAME—INTERFERENCE WITH SUBTERRANEAN WATER—INSTALLATION OF SEWER.
   The installation of a sewer is obviously an intentional activity, and when such interferes with the subterranean water supply of a neighbor, the question of liability depends upon whether such activity was reasonable.

5. SAME—REASONABLENESS OF INTERFERENCE WITH SUBTERRANEAN WATER SUPPLY.
   Ruling of the trial court, that established water supply within the confines of plaintiff's own land could not be interfered with with-

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  56 Am Jur, Waters §§ 101–103, 111.
[2]  56 Am Jur, Waters §§ 105, 107.
[3]  56 Am Jur, Waters §§ 109, 110, 120.
[4]  56 Am Jur, Waters §§ 109, 110.
     Liability for pollution of subterranean waters.  38 ALR2d 1265.
[5, 6]  56 Am Jur, Waters §§ 109, 110, 136, 251.

out consequences and allowance of damages for such interference *held*, error, since there is no liability for the reasonable interference with the subterranean water supply of a neighbor.

6. SAME—LIABILITY FOR INTERRUPTION OF SUBTERRANEAN WATER—REASONABLE USE.

Judgment for plaintiffs, whose subterranean water supply was temporarily interrupted as a result of defendant's activity in installing a trunk line sewer on a public easement *held*, error, where there was no transportation of the water to distant areas, no permanent damage to the subterranean water table, and the water was merely moved out of the immediate area of the public easement in order to facilitate sewer construction, since reasonable development of the public utility easement required such steps, it was reasonable, as to surrounding areas, to have a trunk line sewer buried on the public easement as intended for the area when it was platted, and the sewer trunk line benefited the area by being so constructed as to allow surrounding homes to attach their sewers.

Appeal from Oakland; Beer (William John), J. Submitted Division 2 March 2, 1967, at Lansing. (Docket No. 2,609.)   Decided July 10, 1967.

Complaint by Richard J. Hart and Ruth E. Hart against Olimpio D'Agostini, doing business as Shelby Construction Company, Farmington Township, Oakland County, and the Department of Public Works of Oakland County, seeking damages as the result of the interruption of plaintiffs' private water supply caused by the temporary draining of subsurface water during the construction of a sewer. Farmington Township was dismissed as a defendant on motion of plaintiffs.   Judgment for plaintiffs against defendants D'Agostini, and Department of Public Works of Oakland County.   Both defendants appeal.   Reversed.

*Renfrew, Edberg & Baldwin*, for plaintiffs.

*Patterson & Patterson, Barrett and Whitfield* (*Robert G. Waddell*, of counsel), for defendants.

McGREGOR, J.  In November, 1964, the appellants began constructing a sanitary sewer trunk line on a public utility easement in close proximity to appellees' home.  The easement passed through wet lands that required temporary draining of the subsurface water so the sewer could be installed.  The appellants drove 12-feet deep well points along the sewer construction trench in order to pump water out or lower the water level during construction of the sewer trunk line.  Water was pumped out of the ground to that depth and this was done in accordance with usual engineering practices.  It is undisputed that the pumping of the water out of the area of the sewer construction caused appellees' well to go dry.  The well went dry on November 22d for two days and then again on November 26th, and stayed dry until January 20, 1965, when it was reactivated by a professional well man reworking the well.  An action was brought in the trial court for damages on account of expenses incurred in reworking the well, in obtaining a temporary water supply, and for inconvenience caused by the interruption of the normal water supply.  The trial court awarded damages of $886.98 of which $400 was for the appellees' inconvenience.

The trial court ruled that when a person has established a lawful water supply within the confines of his own land, that water supply cannot be interfered with without consequences.  Such a ruling was error.  In our increasingly complex and crowded society, people of necessity interfere with each other to a greater or lesser extent.  Subterranean water, which is no respecter of property lines, is often impossible to extract without water from adjoining lands percolating across the property line.  The right to enjoyment of the subterranean water beneath a person's land cannot be stated in the terms of an absolute right.

The liability for interference with the subterranean water supply of a neighbor has been expressed, depending upon whether the causative activity (1) if intentional, was unreasonable, or (2) if unintentional, was negligent. See Restatement, Torts § 822, at p 226; Annotation, 29 ALR2d 1357 (1953). Since the installation of the sewer was obviously intentional, the question becomes whether that activity was reasonable.

The question of subterranean water rights has rarely been raised in the appeal courts of Michigan, and not since *Bernard* v. *City of St. Louis* (1922), 220 Mich 159, has a similar issue been decided. Before that only *Schenk* v. *City of Ann Arbor* (1917), 196 Mich 75 (LRA1917F 684, Ann Cas 1918E 267) was closely on point. Both cases involved a public water company intentionally removing water from the subterranean supply and transporting it elsewhere for consumption, and in both cases it was held that such removal of the water, which was in fact a partial destruction of the water table, was an unreasonable use of the specific land and unreasonable as to the surrounding lands. The municipalities were liable for the partial destruction of the water table with the resulting damages to the wells on surrounding land. The restricted nature of these holdings was pointed out in the *Schenk Case*:

"This does not prevent the proper user by any landowner of the percolating waters subjacent to his soil in agriculture, manufacturing, irrigation, or otherwise, *nor does it prevent any reasonable development of his land* by mining or the like, *although the underground water of neighboring proprietors may thus be interfered with or diverted.*" (Emphasis added.) *Schenk* v. *City of Ann Arbor, supra,* at p 84, quoting *Meeker* v. *City of East Orange*

(1909), 77 NJ Law 623 (74 Atl 379, 25 LRA NS 465, 134 Am St Rep 798).

In the case before us water was not transported to distant areas for consumption, nor was there any evidence of permanent damage to the subterranean water table. Here, water was merely moved out of the immediate area of the public easement in order to facilitate sewer construction. Improvement and reasonable development of the public utility easement required such steps. As to the surrounding areas, it was not unreasonable to have a trunk line sewer buried on a public easement, as such use was intended for the area when it was platted. Further, the sanitary sewer trunk line benefitted the area as it was so constructed to allow the surrounding homes to attach their sewers to the trunk line.

The decision of the trial court is reversed. Costs to appellants.

T. G. KAVANAGH, P. J., and QUINN, J., concurred.