MAERZ v UNITED STATES STEEL CORPORATION

Docket No. 50718. Submitted March 2, 1981, at Grand Rapids.—
    Decided June 8, 1982.

   Plaintiffs, Donald and Freida Maerz, are owners of certain resi-
   dential and business property in Rogers Township, Presque Isle
   County. Defendant, United States Steel Corporation, operates a
   limestone quarry which, as of early 1978, extended as close as
   1,500 feet to plaintiffs' property. Defendant's activities include
   drilling and the use of explosives. Additionally, defendant
   expels quantities of water from the quarry by means of pumps.
   Plaintiffs brought an action in the Presque Isle Circuit Court,
   alleging counts of negligence, strict liability and nuisance predi-
   cated upon two theories of causation: blasting and dewatering
   of the quarry. The primary component of plaintiffs' damages
   was the loss of a water well located upon their property which
   provided the exclusive source of potable water for their use.
   Defendant moved for partial summary judgment to the extent
   that plaintiffs' claim was based upon the dewatering of defen-
   dant's adjoining quarry operation. The court, Joseph P. Swal-
   low, J., granted defendant's motion, holding that "disposal of
   percolating waters for the beneficial ownership or enjoyment of
   the land from whence they are taken is not actionable". Plain-
   tiffs had presented defendant with 66 interrogatories. Several of
   these related to damage to property sustained by persons other
   than plaintiffs. These the defendant refused to answer and
   sought a protective order preventing such inquiry on the
   grounds that information obtained would be irrelevant and
   prejudicial. The trial court granted a protective order. Claiming
   inability to proceed to trial without further discovery and
   preparation, plaintiffs moved for a continuance. At a hearing
   on this motion, the parties stipulated that, absent added discov-
   ery time, plaintiffs could not establish blasting as a proximate
   cause of the claimed damages. The trial court denied the

REFERENCES FOR POINTS IN HEADNOTES

[1] 78 Am Jur 2d, Waters §§ 153, 154.
   Liability for obstruction or diversion of subterranean waters in use
     of land. 29 ALR2d 1354.
[2] 23 Am Jur 2d, Depositions and Discovery §§ 148, 149.

motion for a continuance and granted summary judgment as to that part of plaintiffs' complaint not related to the dewatering theory. Plaintiffs appealed. *Held:*

1. Whether or not the intentional interference with the subterranean water supply of a neighbor is actionable depends on whether or not the causative activity was reasonable. The court erred in holding that the destruction of plaintiffs' well was not actionable as a matter of law.

2. Evidence which might have probative value on a material issue and might be admissible if a proper foundation is laid is properly discoverable under the court rules. Evidence of damages to property sustained by other persons might have probative value on the issues of proximate cause and knowledge, which would be material to the negligence claim. There was a possibility that evidence sought might have been admissible. The court erred in granting the protective order.

Reversed.

1. WATER AND WATERCOURSES — SUBTERRANEAN WATER — TORTS.

Whether or not the intentional interference with the subterranean water supply of a neighbor is actionable depends on whether or not the causative activity was reasonable.

2. TRIAL — DISCOVERY — COURT RULES.

Evidence which might have probative value on a material issue and might be admissible if a proper foundation is laid is properly discoverable under the court rules; a protective order preventing the discovery of such evidence is improper (GCR 1963, 302.2, 309.4).

*Larry R. Farmer,* for plaintiffs.

*Karen Jo McGinn,* for defendant.

Before: D. F. WALSH, P.J., and CYNAR and W. F. HOOD,* JJ.

W. F. HOOD, J. Plaintiffs initiated an action against defendant alleging that quarrying activities conducted by defendant had caused damage to neighboring residential and business property owned by plaintiffs. On January 22, 1980, and

* Circuit judge, sitting on the Court of Appeals by assignment.

June 4, 1980, the trial court granted motions for partial summary judgment under GCR 1963, 117.2(1) which, together, disposed of plaintiffs' entire case. Plaintiffs appeal as of right from these orders and from various other determinations of the trial court.

Plaintiffs are owners of certain residential and business property in Rogers Township, Presque Isle County. Defendant operates a limestone quarry which, as of early 1978, extended as close as 1,500 feet to plaintiffs' property. Defendant's activities include drilling and the use of explosives. Additionally, defendant expels quantities of water from the quarry by means of pumps.

Plaintiffs' first amended complaint contained counts of negligence, strict liability and nuisance. It was predicated upon two theories of causation: blasting and dewatering of the quarry. The primary component of plaintiffs' damages was the loss of a water well located upon their property which provided the exclusive source of potable water for their use.

On October 30, 1979, defendant moved for partial summary judgment to the extent that plaintiffs' claim was based upon the dewatering of defendant's adjoining quarry operation. On January 22, 1980, the trial court granted defendant's motion, holding that "disposal of percolating waters for the beneficial ownership or enjoyment of the land from whence they are taken is not actionable". Plaintiffs' motion for rehearing of the summary judgment was denied.

Claiming inability to proceed to trial without further discovery and preparation, plaintiffs moved for a continuance. At a hearing on this motion, the parties stipulated that, absent added discovery time, plaintiffs could not establish blasting as a

proximate cause of the claimed damages. The trial court denied the motion for a continuance and granted summary judgment as to that part of plaintiffs' complaint not related to the dewatering theory.

Pursuant to discovery proceedings commencing early in 1979, plaintiffs had presented defendant with 66 interrogatories. Several of these related to damage to property sustained by persons other than plaintiffs. These the defendant refused to answer and sought a protective order preventing such inquiry on the grounds that information obtained would be irrelevant and prejudicial. The trial court granted a protective order on January 22, 1980.

The first issue raised in this appeal is: Did the trial court err in holding that extraction of percolating waters for a useful purpose in connection with the land from which they are taken is reasonable as a matter of law and not actionable?

Some discussion of the various doctrines governing use of ground water is necessary to provide a proper perspective.

The so-called English rule was established by the Court of Exchequer in *Acton v Blundell,* 12 M & W 324; 152 Eng Rep 1223 (1843). Under this rule, a landowner could make use of the percolating waters beneath his land, unlimited in quantity or purpose and without regard to any injury to neighboring landowners caused thereby. As noted by the Court in *Higday v Nickolaus,* 469 SW2d 859, 868 (Mo App, 1971), this is predicated at least in part on notions of property:

"(Percolating) water is regarded as a part of the soil and to which an adjoining proprietor has no absolute or natural right. It belongs to the owner of the land, and *its diversion and appropriation by him for the improve-*

*ment or benefit of his estate cannot be made the basis
for complaint against him* by anyone, however grievous
the resulting injury may be." *Id.,* citing *Springfield
Water Works Co v Jenkins,* 62 Mo App 74 (1895).
(Emphasis by the *Higday* Court.)

An introductory note appearing in Restatement
Torts, 2d, § 848, p 256 states:

"Although framed in property language, the rule was
in reality a rule of capture, for a landowner's pump
could induce water under the land of his neighbor to
flow to his well—water that was in theory the neigh-
bor's property while it remained in place."

The English rule was, however, not universally
popular in American courts. One problem with the
rule was that it immunized a landowner who
removed the percolating water for purely mali-
cious reasons. See, *e.g., Huber v Merkel,* 117 Wis
355; 94 NW 354 (1903). Additionally, although
neighboring landowners theoretically had a prop-
erty right in the percolating waters lying beneath
their lands, the overlying owner with the biggest
pump and deepest well could control the water
otherwise available to both.

Dissatisfied with the harshness inherent in the
English rule, American courts have modified the
English rule in various ways. One such modifica-
tion is sometimes called the "correlative rights"
rule. Under this rule a landowner is unrestricted
in his right to extract underground waters from
his property up to, but not beyond, the point the
exercise of such right unreasonably interferes with
the similar, or correlative right, of his neighbor.
This is substantially the rule adopted by the

American Law Institute, set forth in Restatement Torts, 2d, § 858, p 258.[1]

A lesser modification involves applying the correlative rights rule to impose liability for unreasonable harm resulting from withdrawal of water for use on distant lands but retaining the English rule to permit unrestricted withdrawal for a useful purpose connected with the land from which it was withdrawn. This modification has sometimes been referred to as the rule of "reasonable use".[2] It is this modification which defendant contends, and the trial court held, is the established law in Michigan, per *Schenk v City of Ann Arbor,* 196 Mich 75; 163 NW 109 (1917).

In *Schenk,* the defendant city had constructed pumps on a tract of marshland some three miles outside the city limits and extracted water therefrom for the use of the city's inhabitants. Plaintiff, an owner of a neighboring tract of land, claimed that the city's pumping operation had an adverse effect on his water supply. The trial court concluded that plaintiff was entitled to damages. The Supreme Court affirmed, quoting extensively from *Meeker v City of East Orange,* 77 NJL 623; 74 A 379 (1909), including the following criticism by the *Meeker* Court of the English rule:

[1] The rule reads in pertinent part:

"(1) A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

"(a) the withdrawal of ground water unreasonably causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

"(b) the withdrawal of ground water exceeds the proprietor's reasonable share of the annual supply or total store of ground water."

[2] This designation is unfortunate and in no small measure responsible for the confusion concerning the rule. If applied to this rule, the words *reasonable use* cannot be given their inherent broad meaning of a use reasonable under all the circumstances. Instead, the words must be given the contrived meaning of a use reasonably related to enjoyment of the land from which the waters are taken.

"* * * If the owner of Whiteacre is the absolute proprietor of all the percolating water found beneath the soil, the owner of the neighboring Blackacre must, by the same rule, have the like proprietorship in his own percolating water. How, then, can it be consistent with the declared principle to allow the owner of Whiteacre to withdraw, by pumping or otherwise, not only all the percolating water that is normally subjacent to his own soil, but also, and at the same time, the whole or a part of that which is normally subjacent to Blackacre? Where percolating water exists in a state of nature generally throughout a tract of land, whose parcels are held in several ownership by different proprietors, it is, in the nature of things, impossible to accord to each of these proprietors the absolute right to withdraw *ad libitum* all percolating water which may be reached by a well or pump upon any one of the several lots, for such withdrawal by one owner necessarily interferes to some extent with the enjoyment of the like privilege and opportunity by the other owners. Again, the denial of the applicability to underground waters of the general principles of law that obtain with respect to waters upon the surface of the earth is in part placed upon the mere difficulty of proving the facts respecting water that is concealed from view. But experience has demonstrated in a multitude of cases that this difficulty is often readily solved. When it is solved in a given case, by the production of satisfactory proof, this reason for the rule at once vanishes. * * *" 196 Mich 75, 83-84.

The *Schenk* quotation from the *Meeker* decision continues in part as follows:

"Upon the whole we are convinced, not only that the authority of the English cases is greatly weakened by the trend of modern decisions in this country, but that the reasoning upon which the doctrine of 'reasonable user' rests is better supported upon general principles of law and more in consonance with natural justice and equity. We therefore adopt the latter doctrine. This does not prevent the proper user by any landowner of the percolating waters subjacent to his soil in agricul-

ture, manufacturing, irrigation, or otherwise, nor does it prevent any reasonable development of his land by mining or the like, although the underground water of neighboring proprietors may thus be interfered with or diverted; but it does prevent the withdrawal of underground waters for distribution or sale for uses not connected with any beneficial ownership or enjoyment of the land whence they are taken, if it results therefrom that the owner of adjacent or neighboring land is interfered with in his right to the reasonable user of subsurface water upon his land, or if his wells, springs, or streams are thereby materially diminished in flow, or his land is rendered so arid as to be less valuable for agriculture, pasturage, or other legitimate uses." 196 Mich 75, 84.

The *Schenk* Court concluded that, although the English rule is the one applied and to be applied in respect to most of the ordinary uses of land, it was not applicable to the case before it. To the case before it the *Schenk* Court applied the principle that the plaintiff neighboring landowner had a correlative right to the underground water that had been violated, for which violation he was entitled to damages.

Two observations are appropriate concerning the *Schenk* decision. First, the correlative rights rule was applied to the case before the court, and the situation involving a defendant's withdrawal of underground water for on-premises use was not before it. Pronouncements as to the law to be applied in the latter situation were, therefore, dictum, lacking the force of an adjudication.

Second, *Schenk* relied strongly upon *Meeker.* The facts in *Meeker* were similar to the facts in *Schenk,* and the *Meeker* Court had held correlative rights in subterranean waters had been violated in the case before it. *Schenk's* last above-quoted language from *Meeker* gives the impression

the *Meeker* Court intended to limit its repudiation of the English rule to situations involving withdrawal of subterranean waters for off-premises use. That impression is not correct. Five years after *Meeker,* in *P Ballantine & Sons v Public Service Corp of NJ,* 86 NJL 331, 333-334; 91 A 95 (1914), the same *Meeker* Court had this to say:

> * * * "Since the decision of this court (in 1909) in *Meeker* * * * it is the settled law of this state that the landowner has not an absolute and unqualified property in all water found percolating in his soil to do what he pleases with it. * * * He has the right to its use *only in a reasonable manner and to a reasonable extent,* for his own benefit for domestic purposes as well as in manufacturing, and his own consumption as in agriculture, irrigation and the like, *and without undue interference with the rights of other landowners to the like use and enjoyment of such water."* (Emphasis added.)

More recently, in the case of *Woodson v Twp of Pemberton,* 172 NJ Super 489, 503-504; 412 A2d 1064 (1980), the New Jersey court pointed to *Meeker's* strong approval of a New Hampshire decision[3] which held that:

> "[T]he true rule is that the rights of each owner being similar, and their enjoyment dependent upon the action of other landowners, their rights must be correlative and subject to the operation of the maxim *sic utera, & c.,* so that each landowner is restricted to a reasonable exercise of his own rights and a reasonable use of his own property in view of the similar rights of others."

*Woodson* concluded that *Meeker* never intended its correlative rights rule be limited to situations of off-premises use of withdrawn subterranean water.

---

[3] *Bassett v Salisbury,* 43 NH 569; 82 Am Dec 179 (1862).

Thus, the view that *Schenk* established a rule permitting unrestricted withdrawal of underground water for on-premises purposes not only relies upon dictum but assumes *Schenk* adopted from *Meeker* a rule that was not there.

There are two other Michigan cases on the subject. One is *Bernard v City of St Louis,* 220 Mich 159; 189 NW 891 (1922), where the withdrawal of water from defendant city's land for off-premises use by the city's inhabitants interfered with plaintiffs' use for hotel purposes of water from a flowing well. The Supreme Court held that plaintiffs' correlative rights in the subterranean waters were violated and plaintiffs were entitled to damages. There is no language in the decision indicating that plaintiffs' claim would not have been actionable if defendant's withdrawal of the water had been for on-premises use.

This Court had before it the case of *Hart v D'Agostini,* 7 Mich App 319; 151 NW2d 826 (1967). In that case defendants had constructed a sanitary sewer trunk line on a public easement in close proximity to plaintiffs' home. The easement passed through wetlands that required temporary draining of the subsurface water so the sewer could be installed. This caused plaintiffs' well to temporarily go dry, for which the trial court awarded plaintiffs damages. The basis of the trial court holding was that, when a person has established a lawful water supply on his own land, such supply cannot be interfered with without consequences. This Court reversed, pointing to Restatement Torts, § 822, p 226, as authority for the proposition that liability for intentional interference with a subterranean water supply depended upon whether such interference was unreasonable. The Court distinguished *Bernard* and *Schenk* and

found that interference was reasonable not only because the water was not being transported to distant premises for consumption but because of several other factors: the interference with plaintiffs' water supply was only temporary, the dewatering was essential to the construction of the sewer, the sewer's construction at that place was reasonable and contemplated at the time the area was platted, and the sewer was of benefit to the entire area. Thus the Court applied a Restatement rule very similar to the rule now appearing in Restatement Torts, 2d, § 858, p 258, and specifically considered factors—including the extent of the resulting harm and the economic and social value of the interfering use—which the present Restatement rule requires be considered in determining whether the interference is actionable.[4]

In summary, our analysis of these cases leads us to conclude that they do not establish as the law of Michigan that extraction of underground water for a purpose connected with the land from which it is withdrawn is, per se, not actionable.

We further hold that the principles expressed in Restatement Torts, 2d, § 858, p 258 are consistent with the Michigan adjudications on the subject and the general trend of decisions in other states, are less harsh and arbitrary and more fair and just than the English rule or lesser modifications of the English rule, and should be followed in Michigan.

---

[4] Section 858 of Restatement Torts, 2d, states that determination of liability for interference with the use of ground water by another is governed by the principles stated in §§ 850 to 857. These require a consideration of the interests of the proprietor making the use, of the proprietor harmed by it, and of society as a whole. Factors affecting the determination include, among others: the economic and social value of the use, the extent and amount of harm it causes, the practicability of avoiding the harm, and the justice of requiring the user causing the harm to bear the loss.

The second issue to be discussed is whether the trial court erred in granting defendant's protective order excusing defendant from answering interrogatories concerning prior incidents and claims of damage due to defendant's quarry operation.[5]

Defendant argues that the protective order was proper and that the evidence of damage to property other than plaintiffs' would be collateral and therefore inadmissible and irrelevant.

GCR 1963, 309.4 governs the scope and use of interrogatories. It provides that they may relate to any matters which can be inquired into under subrule 302.2. The latter provides in part:

"(1) Persons taking depositions unless for good cause otherwise shown as provided by sub-rules 306.2 and 306.4, shall be permitted to examine the deponent regarding any matter not privileged which is admissible under the rules of evidence governing trials and relevant to the subject matter involved in the pending

---

[5] Defendant initially argues that consideration of this issue is precluded because plaintiffs did not list the protective order as one of the orders being appealed as required by GCR 1963, 805(1). Because defendant has shown no prejudice resulting from this omission, the failure of plaintiffs to refer to the protective order in their claim of appeal is not fatal. *Adams v Adams,* 100 Mich App 1, 5, fn 1; 298 NW2d 871 (1980).

Defendant also asserts that plaintiffs impermissibly raise an issue on appeal that was not raised before the trial court. Defendant points out that in opposing the protective order before the trial court, plaintiffs did not contend the information sought would be admissible in evidence, but that admissibility was not a requirement for discovery; while in this Court plaintiffs argue the information sought would be admissible. We do not regard this as the equivalent of presenting a new issue, for in its motion for the protective order defendant itself raised before the trial court the issue of admissibility in evidence of the information sought.

Defendant next argues that claims and reports of previous damage caused to other individuals as a result of defendant's operation are so voluminous that it would be a substantial burden for defendant to go through its files looking for them. Defendant has not developed this argument factually, and there is no data upon which this Court could conclude that response to these interrogatories would be burdensome on the basis of sheer volume alone.

action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of relevant facts."

Under Michigan case law, discovery rules are to be liberally construed. *Hallett v Michigan Consolidated Gas Co*, 298 Mich 582, 592; 299 NW 723 (1941), *Vincent v Van Blooys*, 263 Mich 312, 314; 248 NW 633 (1933), *Dowood Co v Michigan Tool Co*, 14 Mich App 158, 161; 165 NW2d 450 (1968). This is reflected in decisions which have made it clear that the admissibility requirement is satisfied so long as the matter sought to be discovered could be admitted for any purpose, including impeachment, upon the offer of any party, including the party resisting discovery. *Kalamazoo Yellow Cab v Kalamazoo Circuit Judge*, 363 Mich 384; 109 NW2d 821 (1961). In *Banaszkiewicz v Baun*, 359 Mich 109, 116; 101 NW2d 306 (1960), the Michigan Supreme Court stated that the purpose of the admissibility limitation was the prevention of "fishing expeditions into areas unrelated to the cause of action, not to impede a party in discovering from any person, whether competent as a witness or not, all facts and information, not privileged, which are relevant to that cause of action. Indeed, it is the gaining of such information, from whatever source, that the rule was designed to facilitate." In *Baun* the Court held that the admissibility requirement did not prohibit the taking of plaintiffs' deposition by an administrator, when such testimony would have been incompetent without a waiver of the protection of the "dead man's statute". The *Baun* case had been viewed as "indicative of judicial resistance to a strict application

of [the admissibility] requirement, when it might seriously impede useful discovery efforts". 2 Honigman & Hawkins, Michigan Court Rules Annotated, Rule 306, Author's Comments 3a, 1981 pocket part, p 35.

In light of these authorities, we hold that the protective order should not have been granted because there was a possibility that the information sought would be admissible evidence. Defendant acknowledges that evidence of damage to property of other individuals might have probative value on the issue of proximate cause, provided a proper foundation could be laid. Such information could also have probative value on the issue of defendant's knowledge, which would be material to plaintiffs' claim of negligence. In *Freed v Simon,* 370 Mich 473, 475; 122 NW2d 813 (1963), the Michigan Supreme Court noted:

"* * * 'evidence of prior accidents has always been admissible to show defendant's notice or knowledge of the defective or dangerous condition alleged to have caused the accident,' and that 'the rule now seems to be established that evidence of prior accidents at the same place and arising from the same cause is admissible not only to show defendant's notice or knowledge of the defective or dangerous condition alleged to have caused the accident, but to show the defendant's negligence on the theory defendant, having notice or knowledge of the defect, is held to a higher degree of care by reason of his notice of such dangerous condition than he otherwise would be.' " *Id.,* citing *Branch v Klatt,* 173 Mich 31, 34, 35; 138 NW 263 (1912), and *Sullivan v Detroit & W Ferry Co,* 255 Mich 575, 578, 579; 238 NW 221 (1931).

The requisite foundation for such admissibility is a showing of similarity of conditions and reasonable proximity in time. *Freed, supra.* But the requirement of a foundation as a prerequisite to

admissibility of evidence should not be a barrier to the discovery of that evidence. This crucial point was made clear by this Court in *Dowood Co v Michigan Tool Co, supra.* In that case, the defendant sold a swimming pool additive to Dowood for resale to retailers and consumers to be used in sanitizing swimming pools and foot baths. The plaintiffs claimed that a quantity of this product ignited spontaneously, causing a damaging fire. The plaintiffs sought to depose an employee of the defendant, which had formulated the product. When the employee was questioned about other fires which had previously occurred, the defendant's counsel instructed the employee not to answer, claiming such questions were irrelevant and inadmissible. The Court held that the plaintiffs were entitled to ask the employee about fires occurring prior to the plaintiffs' fire if for no other reason than to establish notice on the part of the defendant of the nature of its product. *Id.,* 161. Regarding admissibility of such evidence, the Court stated:

"Conceding *arguendo* that defendant is correct in saying the other fires have no relevance unless it is shown they occurred under conditions substantially similar to the one involving plaintiffs, it does not follow that plaintiffs must prove similarity of conditions before deposing Mr. Decker and others about such fires. Such a condition precedent to discovery might well be insurmountable, requiring plaintiffs to demonstrate that they have no need for discovery before they can obtain it." *Id.,* 163. (Footnote omitted.)

Defendant further argues that evidence of damage to other property would clearly be more prejudicial than probative and for that reason would not be admissible. MRE 403 permits evidence to be excluded if its probative value is substantially

outweighed by the danger of unfair prejudice. Some prejudice undoubtedly would result to defendant by allowing plaintiffs to present testimony of local property owners regarding damage to their property caused by defendant, but this must be weighed against the probative value of the evidence. The probative value may be substantial, as this Court stated in *Grubaugh v City of St. Johns,* 82 Mich App 282, 288; 266 NW2d 791 (1978):

"Evidence of prior accidents involves positive proof directly tending to establish the existence of a defect, and raises the defendant's standard of care to that of a person aware of the defect."

This would logically also apply to cases involving intentional conduct causing damage. Moreover, the balancing of the probative and prejudicial aspects of such evidence would more properly be done at trial. As stated by the Court in *Dowood Co v Michigan Tool Co, supra:*

"If it should develop that the evidence of other fires is inadmissible for any reason, the trial judge can adequately protect the rights of the parties by appropriate trial rulings. But we are at the pretrial stages and we hold that the evidence of other fires is presumptively admissible, but with the caveat that this is not to be construed as the law of the case beyond the discovery stage." *Id.,* 163.

The granting or denial of discovery is within the trial judge's discretion. *Masters v City of Highland Park,* 97 Mich App 56, 59; 294 NW2d 246 (1980). However, we can find no justification for the granting of the protective order prohibiting inquiry by interrogatories relating to damage to property of persons other than plaintiffs.

The summary judgments in defendant's favor and the protective order are, therefore, reversed.