**ALLSTATE INSURANCE COMPANY, Plaintiff,**

**v.**

**QUINN CONSTRUCTION COMPANY; National Union Fire Insurance Company of Pittsburgh, Pa.; and Insurance Company of North America, Defendants and Parties to a Third–Party Complaint.**

Civ. A. No. 85–2220–WD.

United States District Court, D. Massachusetts.

Feb. 28, 1989.

John B. Connarton, Jr., Boston, Mass., and Leslie W. Fleming and Dana L. Ramsay, Dennenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, Southfield, Mich., for plaintiff.

Anil Madan and Steven R. Sortevik, Madan and Madan, Boston, Mass., for Nat. Union Fire Ins. Co.

David Carey, Flash and Athas, Boston, Mass., for Ins. Co. of North America.

## MEMORANDUM

WOODLOCK, District Judge.

Plaintiff Allstate Insurance Co. ("Allstate"), the successor to Northbrook Excess and Surplus Insurance Co. ("Northbrook"); defendant/third-party plaintiff National Union Fire Insurance Co. ("National Union"); and defendant/third-party defendant Insurance Co. of North America ("INA") have each filed motions for summary judgment. Allstate, the property insurer of Warren Petroleum Co. ("Warren"), is seeking reimbursement from Warren's liability insurers, under the doctrine of subrogation, for monies Allstate paid to Warren to cover the costs of cleaning up gasoline contamination that originated on Warren's property.

For the reasons set forth below, I will grant Allstate's Motion for Partial Summary Judgment as against National Union and deny it as against INA, grant INA's Mo-

tion for Partial Summary Judgment, and deny National Union's Motion for Summary Judgment.

### I

The facts as set forth in an Agreed Statement submitted by the parties show the following.

Gasoline contamination occurred "on, in, beneath, and about" the site of a gasoline service station operated by Warren in Whitman, Massachusetts.

At all relevant times, Allstate was Warren's property damage insurer. Warren also had liability insurance, provided by INA from June 30, 1980 to July 1, 1982 and by National Union from July 1, 1982 to July 1, 1984.

On January 19, 1982, New England Telephone Co. ("NETC") discovered gasoline in an underground vault adjacent to the Warren property. NETC had the gasoline pumped out of the vault, and notified the Massachusetts Department of Environmental Quality Engineering ("DEQE"). The source of the gasoline was not determined, however, and no notice of the occurrence was given to Warren or any insurer.

In the fall of 1982, again detecting gasoline in its vault, NETC initiated an investigation, of which Warren was informed on or about November 4, 1982. Tests determined that the leak was caused by a fractured two-inch fiberglass pipe, which had been installed by defendant Quinn Construction Company ("Quinn") in 1976 on the Warren property.[1] The rupture of the pipe appears to have resulted from Quinn's negligent backfill of the excavation with dirt containing large rocks instead of fine gravel or sand. The pipe was repaired; further testing revealed no other leaks thereafter.

The pipe leaked only at the time an associated storage tank was filled, an average of five times per week over a six-year period. The estimated loss of five to six

gallons of gasoline per fill was not noticed in the inventory records.

In November 1982, the DEQE ordered Warren to conduct certain investigative and remedial measures. Warren took these measures, incurring costs of $144,-722.15, which were reimbursed by Allstate after Warren submitted claims under its policy.

Relying on pertinent provisions of their policies, National Union and INA denied any liability to Allstate and Warren for damage to the Warren property and the associated on-site cleanup costs. Allstate filed the instant action on May 20, 1985.

### II

Three issues are in dispute. First, National Union claims that Allstate is not entitled to reimbursement as Warren's subrogee because Allstate's payments to Warren were voluntary, or alternatively, because Allstate is the insurer primarily responsible for the loss. Second, National Union and INA each contend that any "occurrence" as defined in their policies took place, if at all, during the other's policy period. Third, National Union and INA both assert that they are not liable because their policies excluded damage to the property of the insured; in addition, INA asserts that it is not liable because its policy contains a pollution exclusion for the occurrence claimed here.

### A. SUBROGATION

#### 1. *Voluntary Payment*

██ National Union argues that Allstate is not entitled to subrogation because it paid Warren's claim voluntarily, rather than under legal compulsion. The law is well settled that volunteers have no right of subrogation. *See MacAleese's Case,* 308 Mass. 513, 516, 33 N.E.2d 280 (1941); *United States Fidelity and Guar. Co. v. N.J.B. Prime Investors,* 6 Mass.App.Ct. 455, 460, 377 N.E.2d 440 (1978).

---

1. Quinn has not filed an answer and is not involved in the cross-motions for summary judgment.

I find, however, that Allstate cannot properly be characterized as a volunteer in this matter.

The Tenth Circuit has observed:

> The liability of an insurer need not be ironclad in order for it to settle a claim without a subsequent finding that the payment to the insured was voluntary. A payment is not voluntary if it is made with a reasonable or good faith belief in an obligation or personal interest in making that payment.

*Weir v. Federal Ins. Co.*, 811 F.2d 1387, 1395 (10th Cir.1987) (citation omitted). In a footnote, the court noted that the purpose of this rule is to encourage insurers to settle promptly claims that appear to be valid. *Id.* at 1395 n. 6.

In the same vein, Couch notes that "any doubt as to the applicability of this principle [of no subrogation for voluntary payment by the insurer] is construed in favor of the insurer and the nonexistence of a volunteer status." 16 G. Couch, R. Anderson & M. Rhodes, *Cyclopedia of Insurance Law* § 61:57, at 140 (rev. 2d ed. 1983) (footnote omitted).

Allstate could be characterized as a volunteer only if it paid Warren when it clearly had no obligation to do so under its policy. That is not the case here. In fact, the opposite is true: Allstate was liable under its policy. National Union's own brief argues persuasively that Allstate insured Warren against property damage such as Warren suffered in this case:

> According to the plain meaning of the language used, Allstate insured Warren for "physical loss of or damage to" any "real and personal property owned, used, or intended for use by" Warren. Further, Allstate excluded from coverage "pollution or contamination," but did not exclude the "cost of clean-up operations on [Warren's] premises." Thus, Allstate was Warren's primary insurance carrier for Warren's own property.

Memorandum of Defendant, National Union Fire Insurance Co. of Pittsburgh, Pa., in Support of Its Motion for Summary Judgment at 17 (citation omitted).

Under the circumstances, I find that the payment by Allstate to Warren was not voluntary and therefore does not preclude Allstate from the right of subrogation.[2]

### 2. *Primary Responsibility*

 National Union argues that subrogation is inappropriate in this case because Allstate, rather than National Union or INA, was the primarily responsible insurance company. Allstate is entitled to subrogation only if Warren was entitled to recover both from Allstate and from one or both of the liability insurers, and if Allstate's liability is secondary to that of the liability insurer(s). *See Frost v. Porter Leasing Corp.*, 386 Mass. 425, 426–27, 436 N.E.2d 387 (1982) (defining subrogation).

Examination of the policies indicates that Allstate is only secondarily liable. In the Northbrook policy, Item 15, entitled "Other Insurance," provides that except for two kinds of insurance not at issue in this case,

> this policy shall not cover to the extent of any other insurance, whether prior or subsequent hereto in date, regardless by whomsoever effected, and whether directly or indirectly covering the same property against the same perils. This company shall be liable for loss or damage only to the extent of value in excess of the amount recoverable from such other insurance.

The National Union and INA policies contain no similar clause. Therefore, if their policies are applicable, the liability insurers are primarily liable while Allstate is secondarily liable.

I turn to examine the applicability of the policies of the two liability insurers.

## B. OCCURRENCE

 National Union and INA both contend that the contamination did not result from an "occurrence" within the periods of their respective policies, June 30, 1980 to

---

**2.** My disposition of this issue makes it unnecessary to consider Allstate's argument, first made at the hearing on these motions, that the rule excluding volunteers from subrogation rights is inapplicable to contractual, as opposed to legal, subrogation.

July 1, 1982 for INA and July 1, 1982 to July 1, 1984 for National Union. "Occurrence" is defined in the National Union policy as "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*" (emphasis in original).[3]

A pair of recent First Circuit cases have discussed the meaning of "occurrence" in the insurance context.[4] In *Eagle–Picher Indus. v. Liberty Mutual Ins. Co.*, 682 F.2d 12, 24–25 (1st Cir.1982), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1280, 75 L.Ed.2d 500 (1983), an asbestos case, the court held the date of the onset of disease symptoms —rather than the date of initial exposure to the cause of the disease or the date of actual diagnosis—to be the date of occurrence. The court concluded that a disease occurs "when it becomes clinically evident, that is, when it becomes reasonably capable of medical diagnosis." *Id.* at 25 (footnote omitted).

A somewhat different articulation was offered in *American Home Assur. Co. v. Libbey–Owens–Ford Co.*, 786 F.2d 22 (1st Cir.1986), involving the failure of the windows in the John Hancock building. There the court held that "the test for determining the date of the occurrence should be the time at which a reasonable person would be aware that a defect exists that may give rise to a cause of action." *Id.* at 30. An earlier case, *Bartholomew v. Insurance Co. of N. Am.*, 502 F.Supp. 246 (D.R.I.1980), *aff'd sub nom. Bartholomew v. Appalachian Ins. Co.*, 655 F.2d 27 (1st Cir.1981), is in accord. Adjudicating a dispute over car wash equipment that malfunctioned continually over a three-year period, Chief Judge Pettine ruled that the "occurrence" took place when the plaintiff knew, or reasonably should have known, that the defect existed. *Id.* at 252–54.[5]

National Union seeks to avoid these occurrence rules by focusing on when NETC discovered the gasoline contamination. Looking to *Eagle–Picher*, National Union contends that coverage in the instant case was triggered in January 1982—during the INA policy period—when, unbeknownst to Warren, the gas leak became evident to NETC. NETC is not the relevant discoverer, however. In the absence of knowledge by Warren, a necessary predicate for an "occurrence," as that term has come to be understood in the First Circuit, is missing. If not communicated to Warren, NETC's knowledge of contamination—knowledge which did not include identity of the pollution's source—was immaterial. National Union is liable here because November 1982 was the first time Warren knew of the contamination, and there is nothing to indicate that it should have known about the leak earlier.[6]

I find that liability for the Warren gas leak is established by the "occurrence" of November 1982—during the period covered by the National Union policy—when gasoline contamination first became known to Warren.

## C. EXCLUSIONS

### 1. *Damage to Insured's Premises*

■ Both liability policies exclude damage to property owned, occupied, or used

---

3. The copy of the INA policy submitted by the parties appears to contain no definition of "occurrence." But the quoted definition is apparently standard for liability policies of this type, sometimes slightly varied as noted *infra* note 5. In its briefing, Allstate describes the INA definition as identical to the National Union definition. INA does not challenge that characterization.

4. Although the parties appear to agree that Massachusetts law governs their dispute, I have been directed to no cases in which the issue here is considered under the law of Massachusetts. Discussed below, however, are cases from within the First Circuit that decide this issue after analysis of opinions from other jurisdictions and general principles of insurance law.

5. I note that in *Eagle–Picher* and *American Home Assurance*, unlike *Bartholomew* or the instant case, "occurrence" is defined in the policies at issue as an accident which resulted in injury "during the policy period." However, the results in the cases do not turn on this distinction.

6. According to the Agreed Statement of Facts, the estimated amount of gasoline loss was only five-six gallons per fill of the storage tank and thus was not noticed in the inventory records.

by the insured; property in the care, custody, or control of the insured; and property as to which the insured is exercising physical control. Both liability insurers claim that this exclusion bars Allstate's claim in this case. Allstate contends that the "owned property" exclusion does not apply to cleanup activities performed on or below the insured's property to prevent contamination of the property of third parties.

There are no Massachusetts cases dealing with this type of exclusionary clause. In other insurance contexts, the Supreme Judicial Court has held that when "the terms of [an] exclusionary clause are plain and free from ambiguity ... we must construe the words of the policy in their usual and ordinary sense." *Barnstable County Mutual Fire Ins. Co. v. Lally,* 374 Mass. 602, 605, 373 N.E.2d 966 (1978); *accord Continental Casualty Co. v. Gilbane Bldg. Co.,* 391 Mass. 143, 147, 461 N.E.2d 209 (1984) ("We read the policy as written. We are not free to revise it or change the order of the words."); *Thomas v. Hartford Accident and Indem. Co.,* 398 Mass. 782, 784, 500 N.E.2d 810 (1986). At the same time, Massachusetts follows the general rule of insurance law that "[e]xclusions from coverage are to be strictly construed. Any ambiguity in ... exclusions must be construed against the insurer." *Vappi & Co. v. Aetna Casualty & Surety Co.,* 348 Mass. 427, 431, 204 N.E.2d 273 (1965) (citations omitted).

The "owned property" exclusion has been considered in other jurisdictions, where courts have held that it does not bar recovery of environmental cleanup costs. In *Bankers Trust Co. v. Hartford Accident and Indem. Co.,* 518 F.Supp. 371, *vacated to permit submission of addition-*

*al evidence,* 621 F.Supp. 685 (S.D.N.Y. 1981), the court found that cleanup of spillage from a leaking fuel oil pipe was not excluded by a clause identical to the one here. The court reasoned that the spill was not affecting the property owners' own land use; rather, the cleanup was done only to prevent damage to the property of third parties. Furthermore, the proper construction of an ambiguous provision, the court pointed out, is one that yields a reasonable result: if the costs of cleanup were not recoverable, the insured would have the incentive simply to allow the pollution to continue. Under that scenario, the insurance company would ultimately have to spend much more to clean up the resulting actual damage to the property of third parties. For these reasons, the court concluded that the cleanup was as a matter of law within the coverage of the liability policy, which it construed to cover work performed on the insured's property in order to prevent damage to the property of third parties. *Id.* at 373–74; *accord Consolidated Rail Corp. v. Certain Underwriters at Lloyds,* No. 84–2609, 1986 WL 6547 (E.D. Pa. June 5, 1986), *aff'd without published opinion,* 853 F.2d 917 (3d Cir. 1988) ("There is no logical or just reason why an insured should allow a condition on his land to result in damage to others simply to assure and secure coverage when preventive measures could prevent not only substantial damage or loss to the property of others, but also prevent sizeable claims for damages against the insured and his insurer.") (quoting *Lehigh Elec. and Eng'g Co. v. Selected Risks Ins. Co.,* 30 Pa.D. & C.3d 120, 126 (1982)).[7]

I find these authorities persuasive.[8] There is no question that "[t]he broad pur-

---

**7.** In *United States Aviex Co. v. Travelers Ins. Co.,* 125 Mich.App. 579, 336 N.W.2d 838 (1983), also relied on by Allstate, Brief in Support of Motion for Partial Summary Judgment at 22–23, the court based on an entirely different rationale its holding that an "owned property" exclusion allowed recovery for cleanup of chemical contamination. The panel there, agreeing with the court below, stated that "percolating water is not owned by the owner of the land under which it flows and so does not fit within the policy's exclusion." 336 N.W.2d at 843. This rationale is inapplicable in Massachusetts. "It

is, of course, settled in this Commonwealth that a landowner has absolute ownership in the subsurface percolating water in his land." *Gamer v. Town of Milton,* 346 Mass. 617, 620, 195 N.E.2d 65 (1964).

**8.** In a recent case, Judge Mazzone held that the "owned property" exclusion shielded an insurance company from liability for pollution damages. *Travelers Ins. Co. v. Waltham Indus. Laboratories Corp.,* 1988 U.S. Dist. LEXIS 10873, No. 87–0760–MA, slip op. at 29–32, 1988 WL 103323 (D.Mass. Sept. 26, 1988). In that case,

pose of [a] comprehensive general liability insurance policy, so far as it relate[s] to property, [is] to cover [damage to] ... other people's property." *Crane Serv. & Equip. Corp. v. United States Fidelity & Guar. Co.*, 22 Mass.App.Ct. 666, 668, 496 N.E.2d 833 (1986). It is entirely consistent with this purpose to interpret liability policies to cover pollution cleanup activities necessary to *prevent* costly damage to the property of others. In some cases, the property owner will have no first-party insurance; he should not forfeit coverage by promptly cleaning up contamination rather than waiting for it to cause serious environmental damage. In the unique context of environmental contamination, where prevention can be far more economical than post-incident cure, it serves no legitimate purpose to assert that soil and groundwater pollution must be allowed to spread over boundary lines before they can be said to have caused the damage to other people's property which liability insurance is intended to indemnify.

For these reasons, I find that an "owned property" exclusion in a liability policy does not bar recovery of the costs of cleaning up environmental contamination which presented a demonstrated danger to the property of another.

### 2. *Sudden and Accidental*

Although my determination that National Union is liable here does not require that all of INA's arguments be addressed, I do note INA's conclusory assertion that the gasoline contamination here was not sudden and accidental and accordingly is subject to exclusion. That assertion has been disposed of fully by the Massachusetts Appeals Court in *Shapiro v. Public Serv. Mutual Ins. Co.*, 19 Mass.App.Ct. 648, 649–53, 477 N.E.2d 146, *review denied*, 395 Mass. 1102, 480 N.E.2d 24 *and* 395 Mass. 1105, 482 N.E.2d 328 (1985). I need only cite the case—a modest effort not undertaken by INA—in order to state my rejection of that assertion.

there appears to have been no evidence that the cleanup activities were necessary to prevent damage to the property of third parties, and the

### III

In summary, I find that Allstate is entitled to subrogation because its payment to Warren was not voluntary and because it was only secondarily liable for Warren's cleanup costs; that National Union rather than INA was on the risk because the "occurrence" took place during its policy period, in November 1982, when Warren first discovered the contamination; and that no exclusion in Warren's liability policy is applicable because the cleanup was necessary to address the demonstrated threat of environmental damage to the property of third parties.

Accordingly,

(1) Allstate's motion for summary judgment is GRANTED as against National Union and DENIED as against INA;

(2) INA's motion for summary judgment is GRANTED; and

(3) National Union's motion for summary judgment is DENIED; and it is

ORDERED in accordance with the stipulation of the parties that judgment in the amount of $144,722.15, plus legally applicable interest from the date of the filing of the Complaint, will be entered for plaintiff Allstate against defendant National Union at the conclusion of this case.

decision does not discuss the line of authority found persuasive here.