TORRUELLA, Chief Judge.
 

 Appellants Justin L. Wyner,
 
 et al.
 
 (collectively, “the Landlords”), appeal a district court order affirming the bankruptcy court’s grant of summary judgment for appellee North American Specialty Insurance Co. (“NASIC”) on the Landlords’ claims that the language of an insurance policy issued to its tenant Wursthaus, Inc. (“Wursthaus”) indicates that the policy covers alleged damage by Wursthaus to real property owned by the Landlords. We affirm.
 

 /.
 
 BACKGROUND
 

 On January 29, 1993, Wursthaus filed a voluntary Chapter 11 petition with the bankruptcy court. Wursthaus operates a restaurant in Cambridge, Massachusetts, in space it has leased from the Landlords (“the leased property”). On March 26, 1993, Wursthaus filed an Adversary Complaint against the Landlords in the bankruptcy court, claiming loss of business income due to the Landlords’ construction in and around the leased property. The Landlords filed an Answer and Counterclaim on May 24, 1993, denying the allegations and counterclaiming that Wur-sthaus damaged the leased property.
 
 [1]
 
 On June 3, 1993, the Landlords filed a third party complaint against NASIC, Wursthaus’ insurer, seeking a declaratory judgment that Wursthaus’ insurance policy (“the policy”) may be reached and applied for the Landlords’ benefit.
 
 [2]
 

 NASIC answered the third party complaint, and on November 16, 1993, moved for summary judgment against the Landlords on all three counts of the Landlords’ third party
 
 *754
 
 complaint against NASIC. In opposition to this motion, the Landlords produced an affidavit of Richard H. Ember (“Ember”), the trustee of a trust that owns the majority interest of the three-story building (“the building”) that contains the leased property.
 
 [3]
 
 In that affidavit (“the Ember Affidavit”), Ember stated that Wursthaus improperly altered and damaged portions of the budding that are not owned, rented, or occupied by Wursthaus. In contrast to the Landlords’ third party complaint against NASIC, the Ember affidavit described the damaged “premises” as including more than just the portion of the budding leased to the Wur-sthaus. The bankruptcy court noted that the Landlords “sought to expand” the definition of “premises” “to include the entire budding,” but did not decide whether the Ember Affidavit properly accomplished the expansion sought.
 
 [4]
 
 The bankruptcy court granted NASIC’s motion for summary judgment on March 18, 1994. The bankruptcy court so ruled based on its finding that the policy issued to Wursthaus does not cover damage by Wursthaus to real property owned by the Landlords. On June 14, 1995, the district court affirmed the bankruptcy court’s decision in a one-sentence order.
 

 In this appeal, the Landlords claim that the district court erred by affirming the bankruptcy court’s summary judgment for NASIC. The Landlords also seek to reach and apply the proceeds of the policy.
 
 [5]
 

 II. DISCUSSION
 

 A. Standard of Review
 

 In reviewing a district court’s affir-mance of a bankruptcy court’s grant of summary judgment, we apply the same decisional standards as the bankruptcy court and the district court before us. We examine a grant of summary judgment
 
 de novo,
 
 with a view to whether there is a genuine issue as to any material fact and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 Den Norske Bank AS v. First Nat’l Bank of Boston,
 
 75 F.3d 49, 53 (1st Cir.1996). Once the moving party (NA-SIC) makes this showing, the party bearing the ultimate burden of proof (the Landlords) cannot rest on mere allegations, but must proffer sufficient competent evidence upon which a rational trier of fact could find in its favor.
 
 Id.
 
 at 53. Whether or not contractual ambiguity exists is generally a matter of law for the court.
 
 See Smart v. Gillette Co. Long-Term Disability Plan,
 
 70 F.3d 173, 178 (1st Cir.1995). If such ambiguity is found, then an argument between parties about the meaning of an ambiguous contract is typically an argument about a material fact, and summary judgment is normally unwarranted unless the extrinsic evidence presented about the parties’ intended meaning is so one-sided that no reasonable person could decide to the contrary.
 
 Den Norske Bank AS,
 
 75 F.3d at 53. Nonetheless, we must resolve all genuine factual disputes, and any competing rational inferences, in the light most favorable to the Landlords, the party against whom summary judgment entered.
 
 Id.; Byrd v. Ronayne,
 
 61 F.3d 1026, 1030 (1st Cir.1995).
 

 B. Interpretation of the Policy
 

 We agree with the bankruptcy court’s finding, which neither the Landlords nor NASIC dispute, that Massachusetts law applies. It is well established that under Massachusetts law, general rules of contract construction apply to the interpretation of an insurance policy.
 
 Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc.,
 
 359 Mass. 221, 268 N.E.2d 666, 669 (1971);
 
 Edward Rose
 
 
 *755
 

 Co. v. Globe & Rutgers Fire Ins. Co.,
 
 262 Mass. 469, 160 N.E. 306, 308 (1928). On appeal, the Landlords take two approaches to argue that summary judgment was improper on its claims against NASIC. First, they argue that the scheme of capitalization and the use of certain terms in the policy indicate either: (a) that the policy covered damage Wursthaus caused to the Landlords’ building; or (b) that, even if the policy did not clearly and explicitly cover such damage, the policy contained contractual ambiguity germane to the issue of whether the policy covered damage caused by Wursthaus to the Landlords’ building. Second, they argue that the policy, if found by its terms to unambiguously exclude coverage, would not cover damage to the extent that an objective and reasonable insured, reading the policy’s language, would expect to be covered, and would therefore violate public policy that such contracts should not be misleading and that coverage should not be unrealistically limited.
 
 See Kates v. St. Paul Fire & Marine Ins. Co.,
 
 509 F.Supp. 477, 491 (D.Mass.1981). The Landlords contend that if we accept any of these arguments, we must reverse the lower courts’ summary judgment.
 

 1. The Policy’s Language
 

 The Landlords argue that the lower courts erred in finding that the policy did not explicitly cover damage to the building, and concluding that the policy did not ambiguously address such coverage. In particular, the Landlords challenge the bankruptcy court’s conclusion that, while the CGL portion of the policy does apply to certain property damage, it contains a specific exclusion for property damage to property “you own,” including the Landlords within the term “you.” The bankruptcy court concluded that since the term “you” is defined in the policy as “any Named Insured,” and the Landlords are both an “ADDITIONAL INSURED”
 
 [6]
 
 and “an insured” (under an endorsement modifying the CGL portion) under the CGL portion of the policy, the plain and unambiguous language of this exclusion bars the Landlords from asserting coverage.
 

 The Landlords contend that the bankruptcy court erroneously failed to differentiate between the expressly defined term “Named Insured” used in the policy and the fact that the Landlords were included as an “ADDITIONAL INSURED.” Specifically, the Landlords attempt to distinguish the term “Named Insured” from the act of generieally adding an entity to the group of those to be covered as part of a more broadly defined category referred to in various places in the policy as “an insured,” “any insured,” and those “insured.” According to the Landlords, capitalization is crucial; “Named Insured” is capitalized throughout the Policy, while “insured,” “an insured” and “any insured” are not similarly capitalized. Additionally, the Landlords attempt to draw a distinction between the terms “ADDITIONAL INSURED,” which they concede includes them, and “Named Insured,” which they deny applies to them. To this end, the Landlords emphasize the usage of “you” and “your,” noting that the Business and Personal Property Coverage Form states that “[throughout this policy the words ‘you’ and ‘your’ refer to the Named Insured shown in the Declarations and any other person or organization,” while the Common Policy Declarations page states that the “Named Insured” is ‘Wursthaus, Inc. & Wursthaus, Inc. DBA Cardullo’s Gourmet Shop.”
 
 [7]
 

 In contrast, NASIC argues that the courts below properly found that because the policy defined “you” as “the Named Insured shown in the Declarations,” and an endorsement modifies the policy to add the Landlords as an “ADDITIONAL INSURED” under the CGL portion, the plain and unambiguous language of the exclusion for damage to property “you own, rent or occupy” bars the Landlords from asserting coverage under the CGL portion. Furthermore, NASIC argues that, along with the contractual language, Massachusetts case law supports its contention that such exclusions apply not only to named insureds (such as Wursthaus), but also to additional insureds (such as the Landlords).
 
 See Massachusetts Turnpike Author
 
 
 *756
 

 ity v. Perini Corp.,
 
 349 Mass. 448, 208 N.E.2d 807, 812 (1965). In
 
 Massachusetts Turnpike Authority,
 
 the Supreme Judicial Court noted that
 

 [t]he naming of additional insureds does not extend the nature of the substantive coverage originally given by the policy but merely gives to other persons the same protection afforded to the principal insured.
 

 Id.,
 
 208 N.E.2d at 813 (citing
 
 Sonoco Products Co. v. Travelers Indem. Co.,
 
 315 F.2d 126, 128 (10th Cir.1963)). According to NA-SIC, with respect to the exclusion for property “you own, rent or occupy” originally agreed to by Wursthaus, “the same policy ... covers the added insured,” the Landlords.
 
 See Sonoco,
 
 315 F.2d at 128.
 

 We agree with these cases that the exclusions for property “you own, rent or occupy” extend to the Landlords as an additional insured. The purpose of provisions to add insureds is “to extend the policy coverage to others ... not to change the nature of th[e] coverage nor to change declarations nor to remove exclusions.”
 
 Id.
 
 Where, as here, the endorsement naming the additional insured contains no language suggesting that the nature of coverage, declarations or exclusions were thereby altered, we see no reason to deviate from the “well-settled [rule] that the policy does not extend any greater coverage to an additional insured.”
 
 Id.
 

 However, the fact that the exclusions for property “you own, rent or occupy” extend to the Landlords as an additional insured does not, in and of itself, dispense with the Landlords’ capitalization argument. Although we cannot conclude, after finding that the policy’s exclusions apply to the Landlords, that the capitalization scheme indicated clearly that the Landlords could benefit from the scope of coverage, if we were to find the contract ambiguous, we would have to reverse the district court’s grant of summary judgment for NASIC. As a result, we must determine whether the capitalization and usage arguments suffice to show contractual ambiguity under Massachusetts law.
 

 “The first approach to the question of interpretation must be to read this insurance policy as one would read any ordinary contract — to inquire what the simplified, conversational language of the policy would mean to a reader applying normal reasoning or analysis.”
 
 Nelson v. Cambridge Mutual Fire Ins. Co.,
 
 30 Mass.App. 671, 572 N.E.2d 594, 596 (1991);
 
 Commerce Ins. Co. v. Koch,
 
 25 Mass.App. 383, 522 N.E.2d 979, 980 (1988). “[A]n ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other’s.”
 
 Jefferson Ins. Co. of New York v. Holyoke,
 
 23 Mass.App. 472, 503 N.E.2d 474, 476 (1987). Rather, “[i]t must be shown that reasonably intelligent persons would differ as to which one of two or more meanings is the proper one.”
 
 Id.
 
 (citing
 
 Ober v. National Cas. Co.,
 
 318 Mass. 27, 60 N.E.2d 90 (1945)).
 

 Applying these standards, we conclude that under Massachusetts law, the Landlords’ arguments do not suffice to show contractual ambiguity, let alone outright coverage, benefitting the Landlords’ claims. First, we find that, in the face of the express exclusion pointed to by NASIC, the capitalization in the policy would not lead reasonably intelligent persons to conclude that the exclusions did not apply as stated. At least one Massachusetts court has rejected an argument for ambiguity contingent on the usage of one term contradicted by inclusion of other, clearer provisions. In
 
 Nelson v. Cambridge Mutual Fire Ins. Co.,
 
 30 Mass.App. 671, 572 N.E.2d 594, 596 (1991), the court found that the term “residence premises” in an exclusionary clause, despite the lack of a pertinent definition, did not lead to legal ambiguity. The court found that no trial was merited on the issue of whether a rented home was covered in addition to a separate owned home, since the declarations page included the address of the owned home under the policyholder’s name.
 
 Id.
 
 Furthermore, in the absence of directly conflicting word meanings,
 
 see Quincy Mut. Fire Ins. Co. v. Abernathy,
 
 393 Mass. 81, 469 N.E.2d 797, 799 (1984) (finding ambiguity regarding scope of coverage for reckless acts where policy covered “aceident[s]” but where exclusion clause disclaims liability for “bodily injury ... which is expected ... from the standpoint of the Insured”), Massachusetts courts appear to find ambiguity in insurance con
 
 *757
 
 tracts somewhat sparingly.
 
 See, e.g., Ober,
 
 60 N.E.2d at 91 (finding no ambiguity as to whether “theatre” would encompass a restaurant or night club “where no admission is charged, but where free entertainment is furnished in connection with the serving of food or other refreshments”);
 
 Jefferson Ins. Co. of New York,
 
 503 N.E.2d at 476 (concluding there was no ambiguity in contract, since exclusion of claims arising from events in which the injured party was in “the care, custody or control” of police department covered situation where injury was suicide). Under these rigorous standards, and in the face of the clear language of the exclusions and the Landlords’ inclusion as an “Additional Insured,” neither the capitalization pattern nor the usage distinction between the terms “Named Insured” and “Additional Insured” referred to by the Landlords can suffice to create legal ambiguity.
 

 Additionally, the Landlords point to the CGL portion’s provision that “[tjhrough-out this policy the words ‘you’ and ‘your’ refer to the Named Insured shown in the declarations, and any other person or organization qualifying as a Named Insured under this policy”; from this provision, the Landlords conclude that they are not covered by the term “you” under this provision. Thus, they contend, ambiguity results. We disagree. Not only does the Landlords’ argument hinge on the “Named Insured” versus “ADDITIONAL INSURED” distinction that we have already rejected, but in fact, the subsequent sentence in the CGL policy states that “[t]he words ‘we,’ ‘us’ and ‘our’ refer to the company providing this insurance.” Thus, the ordinary and common reading of the language in this context would be to find that “you” and “your” were defined as the Named Insured not to draw a distinction between Wursthaus and the Landlords, but between Wursthaus and NASIC.
 

 2. Reasonable Expectations
 

 The Landlords also argue that the policy, if found to unambiguously exclude coverage, would not cover damage to the extent that an objective, reasonable insured, reading the policy’s language, would expect to be covered. According to the Landlords, such a result would violate public policy. While the Supreme Judicial Court has left open the question of whether to take such an approach to the interpretation of an insurance policy,
 
 see Bond Bros., Inc. v. Robinson,
 
 393 Mass. 546, 471 N.E.2d 1332, 1336 (1984) (noting that “we have not yet explicitly adopted [a ‘reasonable expectations’] approach to the interpretation of an insurance policy”);
 
 Markline Co. v. Travelers Ins. Co.,
 
 384 Mass. 139, 424 N.E.2d 464, 465 (1981), even if such an approach definitely applied, the Landlords would not benefit. The CGL portion can reasonably be expected to cover both Wursthaus and the Landlords for claims of third parties.
 
 See, e.g., Crane Service & Equipment Corp. v. United States Fidelity & Guar. Co.,
 
 22 Mass.App. 666, 496 N.E.2d 833, 834 (1986) (stating that, in that case, “the broad purpose of the comprehensive general liability insurance policy, so far as it related to property, was to cover ... other people’s property”). Of course, the Landlords might regard themselves collectively as owning “other people’s property” damaged by Wur-sthaus, and therefore entitled to recovery under the policy. However, the exclusions applicable to them, referred to in the discussion of contractual ambiguity, render such a belief unreasonable.
 
 See, e.g., Nelson,
 
 572 N.E.2d at 596. Finally, we find that the Landlords’ citation to
 
 Allstate v. Quinn Constr. Co.,
 
 713 F.Supp. 35, 40-41 (D.Mass.1989), is inapposite. In
 
 Allstate,
 
 the court found an exception to an “owned property” exclusion in a comprehensive general liability policy “does not bar recovery of the costs of cleaning up environmental contamination which presented a demonstrated danger to the property of another.”
 
 Id.
 
 at 41.
 
 Allstate
 
 was subsequently vacated on other grounds,
 
 see id.,
 
 784 F.Supp. 927 (D.Mass.1990), and at any rate, would appear to implicate concerns of public policy regarding neighboring property owners not alleged to be at stake here.
 

 III. CONCLUSION
 

 The Landlords have pointed to the scheme of capitalization and the system by which terms were used in the insurance policy that gives rise to this case. These drafting points
 
 *758
 
 are coherent enough that they suggest that the Landlords’ argument is not irrational. However, in the face of explicitly worded endorsements and exclusions, they cannot rise to the level of contractual ambiguity as found by Massachusetts courts. Similarly, the Landlords’ public policy based arguments are not convincing.
 

 For the foregoing reasons, the judgment is
 
 affirmed.
 

 [1]
 

 . After NASIC's summary judgment motion, the Landlords submitted an affidavit, discussed
 
 infra,
 
 which claimed damage to a larger portion of the building than just the leased property.
 

 [2]
 

 . The policy included both a property insurance portion and a commercial general liability portion (“CGL portion"). The Landlords argued before the bankruptcy court that it should have been able to recover under either portion. However, on appeal the Landlords have failed to argue, beyond a passing reference in a footnote, that the bankruptcy court erred in its interpretation of the property insurance portion. Therefore, the Landlords have waived their legal and factual arguments regarding the property insurance portion,
 
 see Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,
 
 59 F.3d 284, 294 (1st Cir.1995) (stating that “[i]t is not enough to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones”), and we construe their appeal as based on the bankruptcy court's interpretation of the CGL portion.
 

 [3]
 

 . As the bankruptcy court noted, this property actually comprises several older buildings that over the years have come to be treated as a single building with several street addresses.
 

 [4]
 

 . We do not consider whether the Ember Affidavit properly amended the Landlords' complaint, since the resolution of this issue would not affect the outcome under our analysis.
 

 [5]
 

 . On November 14, 1994, after the bankruptcy court had granted NASIC summary judgment on the Landlords' third party complaint, the Landlords and Wursthaus filed with the bankruptcy court a Joint Motion to Approve Partial Settlement and the Disposition of Remaining Claims. In this motion, the debtor Wursthaus states that it wishes to dismiss its complaint for loss of business income against the Landlords, and the Landlords stated that if they were to prevail on appeal, it would pursue their counterclaim against Wursthaus only to the extent of available insurance proceeds.
 

 [6]
 

 . The pertinent endorsement contains the term "ADDITIONAL INSURED” in full capitalization.
 

 [7]
 

 . Cardullo's Gourmet Shop is a small gourmet store operated by Wursthaus near its restaurant.