# United States Court of Appeals
## For the First Circuit

No. 10-1096

WRIGHT-RYAN CONSTRUCTION, INC. and ACADIA INSURANCE COMPANY,

Plaintiffs, Appellants,

v.

AIG INSURANCE COMPANY OF CANADA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge,
and Hon. John H. Rich III, U.S. Magistrate Judge]

Before

Torruella, Ripple,[*] and Lipez, Circuit Judges.

John S. Whitman, with whom Richardson, Whitman, Large & Badger
was on brief, for appellants.
Jeffrey T. Edwards, with whom Preti, Flaherty, Beliveau &
Pachios, LLP was on brief, for appellee.

July 27, 2011

[*] Of the Seventh Circuit, sitting by designation.

**LIPEZ, <u>Circuit Judge</u>.** This appeal requires us to determine which of two commercial general liability (CGL) insurance policies should be considered "primary" for coverage of a claim arising from an accident at a construction site in Portland, Maine. At the time of the subject claim, Wright-Ryan Construction, Inc. (Wright-Ryan) was insured under its own CGL insurance policy, issued by Acadia Insurance Company (Acadia), and appeared as an "Additional Insured" on a subcontractor's CGL policy, issued by AIG Commercial Insurance of Canada (AIG). Wright-Ryan and Acadia filed a complaint for a declaratory judgment that AIG was obligated to defend Wright-Ryan and for compensation of costs incurred by Acadia in Wright-Ryan's defense. On cross-motions for summary judgment, the district court granted judgment in AIG's favor, holding that Acadia's CGL policy provided primary coverage for the accident claim, with the AIG policy affording solely excess coverage.

Appealing from this grant of summary judgment, Wright-Ryan and Acadia contend that the district court erred as a matter of law in its interpretation of the "Other Insurance" clauses of the two CGL policies, which govern priority of coverage between overlapping insurance policies. According to plaintiffs, a proper reading of these "Other Insurance" clauses dictates that the AIG policy be deemed primary. We agree and therefore reverse.

The salient details of this insurance dispute are uncontested. Wright-Ryan, a Maine construction company, was hired by the University of Southern Maine as the general contractor for the construction of a building known as University Commons. Wright-Ryan in turn subcontracted with the Canadian company Norgate Metal, Inc. (Norgate) for the fabrication and erection of structural steel for the project. Although Wright-Ryan had its own CGL insurance policy, Wright-Ryan required Norgate, as a condition of the subcontract, to obtain CGL insurance for the University Commons project in the amount of $2 million and name Wright-Ryan as an additional insured on the policy. Norgate procured the requisite coverage through AIG,[1] which issued a certificate of liability insurance to Wright-Ryan and the University of Southern Maine naming them "Additional Insureds" to Norgate's policy, providing insurance coverage on a primary and non-contributory basis for all liability "arising out of [Norgate's] premises or operations."

In August 2007, Thomas Behrens, an employee of a company hired by Norgate to assist with the erection of structural steel, tripped while dismounting from a ladder at the construction site

---

[1] To avoid confusion and as a matter of convenience, we refer to Norgate's insurer as AIG throughout the opinion. This shorthand obscures the fact that the CGL policy at issue was initially purchased from Commerce & Industry Insurance Company of Canada, whom AIG subsequently succeeded in interest.

and fell through an unguarded stair opening. Behrens fell four stories and landed on wet pavement at ground level, suffering serious injuries. A little over six months later, Behrens filed suit against Wright-Ryan in Maine's Superior Court for negligence in connection with the accident. Norgate and Behrens's employer were joined as defendants in a later amended complaint.

Upon receipt of the complaint, Wright-Ryan sent a letter to Norgate and AIG tendering to them the defense of the Behrens suit under Norgate's CGL policy. With no response forthcoming from either AIG or Norgate, Wright-Ryan's CGL carrier, Acadia, assumed responsibility for the company's defense. Acadia succeeded in settling the suit against all three defendants for $150,000 in 2009.

Wright-Ryan and Acadia filed a complaint for declaratory judgment against AIG in late 2008 in the federal court for the District of Maine, seeking a declaration that AIG was obligated to defend Wright-Ryan in the Behrens lawsuit. Following settlement of the Behrens lawsuit, Wright-Ryan and Acadia amended their complaint to seek reimbursement for the $150,000 settlement payment and over $40,000 of attorney's fees incurred in Wright-Ryan's defense.

The parties each moved for summary judgment, and the matter was submitted to a magistrate judge for review. The magistrate judge's recommended decision reached two key conclusions. First, it concluded that Behrens's accident arose out

of Norgate's "premises or operations," and thus Wright-Ryan was entitled to coverage under Norgate's AIG policy. Second, it concluded that the AIG policy was excess to Wright-Ryan's Acadia policy for purposes of the Behrens claim. Because the amount expended to defend and settle the Behrens suit was well within the limits of the Acadia policy -- which the magistrate judge concluded to be primary coverage for the Behrens claim -- the magistrate judge recommended that AIG's motion for summary judgment be granted. Adopting the magistrate judge's recommended decision in its entirety, the district court judge entered judgment against Acadia and Wright-Ryan.

This timely appeal followed.

## II.

The issue in this appeal is straightforward. AIG has not challenged the district court's holding that Wright-Ryan is entitled to coverage for the Behrens claim under its policy. The sole and determinative question is whether the district court correctly held Wright-Ryan's Acadia CGL policy to be primary and the AIG policy excess. Reviewing the court's legal construction of the insurance contracts de novo, see Penn-Am. Ins. Co. v. Lavigne, 617 F.3d 82, 84 (1st Cir. 2010), we arrive at the opposite conclusion.

Under Maine law, which the parties agree governs the interpretation of the insurance policies here, the "paramount

principle in the construction of contracts is to give effect to the intention of the parties as gathered from the language of the agreement viewed in the light of all the circumstances under which it was made." Greenly v. Mariner Mgmt. Group, Inc., 192 F.3d 22, 26 (1st Cir. 1999) (quoting Whit Shaw Assocs. v. Wardwell, 494 A.2d 1385, 1387 (Me. 1985)) (internal quotation marks omitted). Unambiguous provisions in insurance contracts, as with any other contract, must be interpreted as written, "giving force to their plain meaning." Id. (citing Jack v. Tracy, 722 A.2d 869, 871 (Me. 1999)). The mere fact of a dispute over the meaning of a particular provision does not render that provision ambiguous; it will be so deemed only when an ordinary person would not understand that the provision has a single accepted meaning. Id.

To untangle the priority of the Acadia and AIG policies, we focus on a provision entitled "Other Insurance," present in near identical form in both contracts. These provisions are not unique to the insurance contracts at issue here. "Other Insurance" provisions are a standard element of liability insurance policies, intended to govern the relationship between and obligations of insurers whose policies provide overlapping coverage for the same claim or loss. See 15 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 219:1 (3d ed. 2011). There is just such an overlap here. Wright-Ryan has coverage for the Behrens claim under both the Acadia policy and the AIG policy. Wright-Ryan is a party to

and appears as the Named Insured on the Acadia policy, and, while not a party to the AIG policy, Wright-Ryan has been added as an "Additional Insured" to that policy for all liability "arising out of [Norgate's] premises or operations." Thus, we look to the policies' "Other Insurance" provisions to determine which of these coverages is primary.

"Other Insurance" provisions typically take one of three forms: an "escape" clause, which completely denies coverage when other insurance is available; a "pro rata" clause, which operates to share coverage of a claimed loss with other available insurance policies; or an "excess" clause, which extends coverage for a claim only when other insurance available for the claim has been exhausted. See Home Ins. Co. v. St. Paul Fire & Marine Ins. Co., 229 F.3d 56, 61 (1st Cir. 2000). The provisions at issue here are of the third, "excess" variety. The relevant portions of the two provisions read as follows:

### a. Primary Insurance

This insurance is primary except when b., below, applies. . . .

### b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent, or on any other basis . . . (a) That is . . . coverage for "your work"; . . .

(2) Any other primary insurance available to you covering liability for

damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".

The above language renders the policies excess in two situations: (1) where there exists another insurance policy covering "your work," a term defined in both the AIG and Acadia policies as "[w]ork or operations performed by you or on your behalf"; and (2) where there exists another liability insurance policy for the premises or operations that is "available to you" and on which "you have been added as an additional insured." Inescapably, the key to interpreting and applying these provisions is the definition of "you."

The parties have given us two choices of definition, each of which produces a different answer to the priority inquiry. Appellants Wright-Ryan and Acadia argue that "you" means only the "Named Insured" identified in each policy. Read in this manner, the terms of the policies produce complementary results: the Acadia policy indicates that its coverage must be excess to AIG's, and the AIG policy that its coverage is primary.

Not surprisingly, appellee AIG rejects this reading. It champions instead a broader definition of "you" adopted by the district court, which equates "you" with the Named Insured as well

as any Additional Insureds added to the respective policies. AIG appears to argue, as it did before the district court, that this coverage dispute can be resolved merely by plugging the definition of "you" it advocates into the AIG policy, which, thus interpreted, provides that its coverage must be excess to the Acadia policy.[2]

To resolve this definitional dispute, we begin with the plain language of the policies. See Bristol W. Ins. Co. v. Wawanesa Mut. Ins. Co., 570 F.3d 461, 463 (1st Cir. 2009). The very first page of each policy states, "Throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy." Turning to the Declarations page of the AIG policy, we find the Named Insured prominently identified, under the header "Item 1. Named Insured and Address," as Norgate Metal Inc. No other individual or entity is listed.

---

[2] In reality, this is an incomplete argument. Under AIG's proposed interpretation of "you," the Acadia policy would also indicate that its coverage must be construed as excess to AIG's. AIG's reading therefore results in direct conflict between the terms of the two policies, as each policy's "Other Insurance" clause is triggered and requires that its policy be treated as excess over the other. To avoid this sort of "logical logjam," well-established Maine law instructs that the conflicting "Other Insurance" clauses be disregarded as mutually repugnant. See Carriers Ins. Co. v. Am. Policyholders' Ins. Co., 404 A.2d 216, 220 (Me. 1979). A finding of mutual repugnancy would typically result in the two insurers sharing coverage of the claimed loss pro-rata. See Carriers, 404 A.2d at 220. However, the appellant did not argue for mutual repugnancy and request proration below, and thus the district court's grant of summary judgment left AIG with no obligation to contribute to the Behrens settlement and costs of Wright-Ryan's defense.

Likewise, the Acadia policy's Declarations identify only Wright-Ryan Construction, Inc. and Wright-Ryan Real Estate LLC (an associated entity with no relation to this lawsuit) as the Named Insureds.

The Declarations pages do not themselves define the class of other "person[s] or organization[s] qualifying as a Named Insured" who are not specifically listed in the policies' Declarations. That task is left to Section II of each policy, descriptively titled "WHO IS AN INSURED." Appearing in near identical form in the two policies, Section II provides a roadmap to the insurance coverage extended automatically to various individuals and entities not expressly listed in the respective policies' Declarations and Endorsements. For example, both policies provide that the executive officers, directors, and employees of a Named Insured company automatically qualify as "insureds," though with certain limitations on the scope of their coverage. Relevant to the question here, both policies also specify that "[a]ny organization you newly acquire or form, . . . and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization." Section II identifies no other persons or entities who may qualify as a Named Insured, nor is there mention of others so qualifying anywhere else throughout the policies.

Reading these provisions together, we find the definition of "you" to be unambiguous: it refers solely to a person or organization listed as a Named Insured in the policy Declarations or "qualifying as Named Insured" by virtue of being newly formed or acquired by a Named Insured. Where, as here, "a term is expressly defined within the four corners of an insurance policy, an inquiring court must defer to that definition and thereby give effect to the intent of the parties." Med. Mut. Ins. Co. of Me. v. Indian Harbor Ins. Co., 583 F.3d 57, 60 (1st Cir. 2009).

The parties have not disclosed the existence of any newly formed or acquired organizations that might qualify as Named Insured under the above provision; we must therefore conclude that the term "you" means solely Norgate in the AIG policy and Wright-Ryan in the Acadia policy. A substitution of Wright-Ryan and Norgate for "you" in their respective policies readily establishes the priority of coverage between the two. With the substitution, the pertinent section of the Acadia policy reads as follows:

> This insurance is excess over:
>
> (2) Any other primary insurance available to [Wright-Ryan] covering liability for damages arising out of the premises or operations for which [Wright-Ryan has] been added as an additional insured by attachment of an endorsement.

As Wright-Ryan has primary insurance under the AIG policy for liability arising out of Norgate's work at the University Commons site, having been added as an Additional Insured on the AIG policy

-11-

by means of an endorsement, the above provision clearly applies. The Acadia policy thus requires that it be treated as excess over the AIG policy.

Making the corresponding substitution of Norgate for "you" in the AIG policy, a different result obtains:

This insurance is excess over:

(2) Any other primary insurance available to [Norgate] covering liability for damages arising out of the premises or operations for which [Norgate has] been added as an additional insured by attachment of an endorsement.

On the record before us, this provision has no application: Norgate is not an additional insured on the Acadia policy. Moreover, the AIG policy unambiguously states that "[t]his insurance is primary except when" the excess coverage provisions, including the above, apply. Reading the two policies together, then, the AIG policy must be treated as primary and the Acadia policy as excess.

Because we consider the operative language of the insurance contracts here to be unambiguous, resort to extrinsic evidence of the parties' intentions is wholly unnecessary. Cf. Pine Ridge Realty, Inc. v. Mass. Bay Ins. Co., 752 A.2d 595, 601 n.11 (Me. 2000) (noting that extrinsic evidence may considered where language of insurance contract is ambiguous). Nonetheless, we note that our interpretation is consistent with the design manifest in the parties' course of dealing. Wright-Ryan required as a condition of its subcontract with Norgate that Norgate procure

CGL insurance and name Wright-Ryan an additional insured on the policy. Wright-Ryan, of course, already had its own CGL insurance policy through Acadia; the only plausible explanation for the subcontract's insurance requirement would be the desire to shift the risk to Norgate for liability arising out of Norgate's subcontract work for Wright-Ryan, ensuring that claims related to that work were paid out of Norgate's CGL insurance before Wright-Ryan's was reached. This arrangement and the risk-shifting motivation underlying it appear to be typical of subcontracting relationships:

> Contracting parties that have required insured status [under an additional insured endorsement] will want the endorsed policy to respond to their losses on a primary basis, leaving their own general liability insurance limits untouched (or called upon only as excess coverage).
>
> . . . .
>
> [T]he CGL policy makes special provisions for coordinating coverages available to these "endorsed" additional insureds, reflecting the risk transfer intentions that the named and additional insureds will have -- that is, that additional insured coverage will pay first, before the additional insured['s] . . . own CGL policy is called upon to pay.

W. Jeffrey Woodward et al., Commercial Liability Insurance § VI.H.1, 14 (2009). By giving effect to the Acadia "Other Insurance" clause and finding the AIG policy primary, we have no doubt that we are properly effectuating the intent of the parties. See Greenly, 192 F.3d at 26.

**III.**

Because the district court's construction of the insurance contracts here differs so sharply from our own, we briefly address the basis for its decision. The district court relied for its rationale almost exclusively on our decision in Wyner v. North American Specialty Insurance Co., 78 F.3d 752 (1st Cir. 1996), another case in which we had occasion to construe the term "you" in the context of an insurance policy. There, applying Massachusetts law to interpret a provision excluding coverage for property "you own, rent or occupy," we held "you" to include not just the "Named Insured" but also anyone constituting an "Additional Insured." Id. at 755-56. Because the language defining "you" in the Acadia and AIG policies is apparently identical to the policy language in Wyner, the district court felt, not surprisingly, that our reading in Wyner controlled the interpretation here.

The relative ease of the interpretive question before us, along with corroborative, extrinsic evidence of the parties' intent, presents us with no pressing need to look to authority interpreting other contracts. If we were to seek such guidance, though, Wyner is neither the sole nor most relevant authority on the point. Decisions interpreting the use of "you" and distinguishing between the "Named Insured" and "Additional Insured"

-14-

are common, due to the ubiquitous use of those terms in insurance policies:

> Insurance carriers often employ the terms "you" and "your" throughout the language of a policy. These terms are typically defined as referring to the named insured shown in the declarations of the policy, and any other person or organization qualifying as a named insured under the policy. Accordingly, "you" and "your" do[] not encompass individuals or entities added as an additional insured to the policy.

3 Russ & Segalla, supra, § 40:26 (footnote omitted). The mainstream of opinions interpreting this or similar definitions has held "you" to be unambiguous and to refer solely to the individual or organization identified as the "Named Insured" in the policy Declarations. See, e.g., Nat'l Union Fire Ins. Co. v. Liberty Mut. Ins. Co., 234 F. App'x 190, 193 (5th Cir. 2007) (taking "as a given" that, under definition of "you" identical to the definition here, "you" was limited to the named insured and did not encompass an additional insured); Alexander v. Nat'l Fire Ins., 454 F.3d 214, 226-27 (3d Cir. 2006) (same); Seaco Ins. Co. v. Davis-Irish, 300 F.3d 84, 86 (1st Cir. 2002) (holding that definition of "you" was unambiguous and referred only to named insured).

Numerous factors counsel against looking to Wyner for aid in interpreting the language here, among them its focus on a different type of insurance provision (an exclusionary provision),[3]

---

[3] Specifically, the provision at issue in Wyner excluded coverage for property "you own, rent or occupy." 78 F.3d at 755.

-15-

the dissimilarity of the parties and their contracting intentions (there, the policy was formed to provide coverage for a tenant and its landlord), and the rather idiosyncratic posture of the case.[4] Indeed, a closer fit can be found in at least two other cases from this circuit that have interpreted "you" and "your" in the precise factual setting here: CGL policies obtained by a subcontractor as a condition of work for a general contractor on a construction project.  See Nat'l Union Fire Ins. Co. v. Lumbermens Mut. Cas. Co., 385 F.3d 47, 50 (1st Cir. 2004) (interpreting "your work" to refer to Named Insured subcontractor's work for Additional Insured general contractor); Merchants Ins. Co. v. U.S. Fid. & Guar. Co., 143 F.3d 5, 7 (1st Cir. 1998) (stating that it was "clear indeed" that "you" referred to Named Insured subcontractor).  If we had any doubt about the proper interpretation of the language here, we might also find more helpful guidance in cases from other jurisdictions interpreting "you" in the context of an "Other Insurance" provision, as here.  See, e.g., Alexander, 454 F.3d at 226-27 (holding, in interpreting "Other Insurance" provision, that "you" means only "Named Insured," and noting that the fact "[t]hat

_____

[4] The typical CGL case involves a third party suing an insured for injury or property damage; this is precisely what CGL insurance policies are meant to cover.  Wyner did not fit the typical mold, but involved instead a suit by an insured against its own CGL policy for damage to property it owned, requiring that we consider whether the CGL policy at issue could be read to cover damage suffered by the insured.

-16-

someone may be an additional insured does not mean they are a Named Insured -- the two terms are not interchangeable").

Given the weight of the authority interpreting a CGL policy's use of the defined term "you" in circumstances similar to ours to mean solely the Named Insured, we see no reason to apply the interpretation adopted -- on very different facts -- in <u>Wyner</u>.

**IV.**

Upon careful review, we conclude that the plain language of the policies at issue here requires the Acadia policy to be treated as excess over the AIG policy.  We therefore reverse the judgment of the district court.

<u>So ordered.</u>