BERTRON L. CARD
*vs.*
ELMER NICKERSON

Androscoggin.    Opinion, March 19, 1954.

*John G. Marshall,* for Plaintiff.

*Frank W. Linnell,* for Defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. WEBBER, J., did not sit.

FELLOWS, J. This is an action on the case brought in the Superior Court for Androscoggin County, for damages caused by the obstruction by defendant of a water course, where water flowed from the plaintiff's property in Auburn to and through the adjoining property of the defendant and thence by pond and brook into the Little Androscoggin River. The case comes to the Law Court on defendant's exceptions.

The record shows, and the jury might properly find, that the plaintiff Bertron L. Card acquired his property in 1919, and that the defendant Elmer Nickerson purchased a portion of his premises in 1937, and then purchased of the plaintiff the remainder in 1949.

The purchase of the lot by the defendant of the plaintiff was made by exchange of deeds. The defendant at the same time sold to the plaintiff (or exchanged), another lot in another location. The defendant testified that he bought the land from plaintiff "to straighten out my line." The deed was made by the attorney for the defendant.

The natural water course existed on plaintiff's and defendant's land wherein the water flowed in a particular direction by a regular channel, having a bed with banks and sides. It had a well defined and substantial existence from within the plaintiff's property through the defendant's property and was rarely, if ever dry. It discharged itself into other bodies of water on its way to the river.

On that portion of the defendant's property which he had purchased from the plaintiff, the defendant constructed a long dam or fill. This dike or obstruction was started by defendant in 1951 and (according to the defendant's testimony) intended to be permanent. It is 132 feet long and

is of rock, telephone poles, gravel and loam. It is about 6 feet high and has at one point a twelve inch drain pipe through it to permit the passing of water, although the drain pipe proved to be very inadequate.

This dam or fill constructed by the defendant causes the water to back up and to overflow the plaintiff's land, which land is slightly higher than the defendant's land. The resulting damage was injury to a natural fresh water spring on the plaintiff's property. Water also covered plaintiff's cess pool, which cess pool was connected with plaintiff's cellar, and water was forced into the plaintiff's cellar, with a total loss of valuable personal property stored in the cellar.

The jury had the benefit of a view, and were instructed that if the verdict was for the plaintiff, the verdict should state whether or not an award was made on the basis of temporary injury or a permanent injury to the plaintiff's property. The verdict stated that the finding was for a permanent injury and assessed damages in the sum of $1500.

During the trial the defendant took exceptions to the above portion of the charge and to certain rulings by the presiding justice, and the case is before the Law Court on these exceptions.

There is a public or natural right in and to a water course which belongs to all persons whose lands are benefited by it, and it cannot be stopped up, or diverted, to the injury of other proprietors. To constitute a water course as defined by the law, it must appear that the water in it usually flows in a particular direction by a regular channel having a bed with banks and sides, and usually discharging itself into some other body or stream of water. It must have a well defined and substantial existence but need not flow continuously or never be dry. *Goodwin and Stewart* v. *Texas*

*Company,* 133 Me. 260; *Goodwin and Stewart* v. *Texas Company,* 134 Me. 266; *Morrison* v. *Bucksport-Bangor,* 67 Me. 353: 56 Am. Jurisprudence, "Waters," 495, Sec. 6. See also for discussion of rules regarding riparian rights, *Water District* v. *Turnpike Authority,* 145 Me. 35, 71 Atl. (2nd) 520; *S. C.,* 147 Me. 149, 84 Atl. (2nd) 433. See also Opinions of the Justices, 118 Me. 503. Equity may enjoin obstruction in proper case. *Lockwood Co.* v. *Lawrence,* 77 Me. 297; *Wilson & Son* v. *Harrisburg,* 107 Me. 207; *Warren* v. *Westbrook Mfg. Co.,* 88 Me. 58.

In the second case above cited, of *Goodwin and Stewart* v. *Texas Company,* 134 Me. 266, it is held that there can be no recovery for permanent damage in an action on the case for the obstruction of a water course, because successive suits may be brought. Evidence of permanent injury is not admissible. Damages are recoverable only to the date of the writ. See also *C. and O. Canal* v. *Hitchings,* 65 Me. 140, and *Caron* v. *Margolin,* 128 Me. 339. 147 A. 419 where many cases are cited.

Where the description in a deed of the premises intended to be conveyed is clear and free from ambiguity, it cannot be varied, controlled or contradicted by parol or extrinsic evidence. In such a case, the deed must be held to be conclusive evidence as to what land and what rights in and to land are intended by the grantor to be conveyed, the quantity of land, and the intention of the grantor to include or exclude from the instrument particular land or particular rights in land. *Lincoln* v. *Avery,* 10 Me. 418; *Bartlett* v. *Corliss,* 63 Me. 287; *Wilmington* v. *Murdough,* 41 Me. 281; *Lothrop* v. *Foster,* 51 Me. 367; *Pelletier* v. *Langlois,* 130 Me. 486. See *Chandler* v. *McCard,* 38 Me. 564, holding that acts and declarations of the parties "are not sufficient to destroy or vary their legal rights as exhibited by the deed."

It is an established principle, that parol evidence is inadmissible to explain, enlarge, vary or control a written

instrument. Every one must be sensible of the danger of controlling written evidence, which is immutable, by that which depends upon memory, and which may be materially varied by the addition, omission, or even transposition of a single word. This principle is applicable to all written contracts, but especially to those by which real estate is conveyed.

If the defendant could avail himself of parol evidence, he could prove title, not by deed or any instrument in writing, but by parol; and if he could hold a particular tract by parol, he might hold any other tract, directly in the teeth of the statutes, that direct the mode of transferring real estate by deed. The admission of such evidence to explain and vary the deed, and establish title, would shake the security of all the real property in the State, and overturn a sound principle of evidence. *Lincoln* v. *Avery*, 10 Me. 418.

In an action at law parol evidence is not admissible to show that a deed was intended to be a mortgage. *Reed* v. *Reed*, 71 Me. 156. See *Brown* v. *Thurston*, 56 Me. 126, holding that at common law parol reservation of crops inadmissible. "If the agreement was before the execution and delivery of the deed it is merged in the final determination as evidenced by the deed."

*Brown* v. *Allen*, 43 Me. 590. "Where a tract of land is granted in clear and unmistakable terms, the grantor, and those claiming under him, are estopped to say in a court of law, that the land thus described in the deed was inserted by mistake, and parol evidence is inadmissible to show that another piece of land was intended to be conveyed." Which case also holds that mistakes or errors can be corrected if at all only in a Court of Equity.

Where a written contract is complete in its terms, parol evidence is not admissible to show conversations before the contract was signed, to vary its terms, *Bassett* v. *Breen*, 118 Me. 279.

During the trial of the case at bar, the defendant Nickerson introduced in evidence the warranty deed that he had received of the plaintiff Card which clearly described the parcel. The deed contained only the usual covenants. There was no reference of any kind to any rights to flow water back upon the plaintiff's adjoining land. The counsel for defendant declared, in an offer of proof, his intention to show by the testimony of the defendant Nickerson that *prior* to the execution of the deed that the plaintiff Card was told by the defendant of the purpose to which he intended to put the land described, and that he intended to fill it and to obstruct the drainage through the low area of land. The defendant claimed that this evidence would create an equitable estoppel and that the plaintiff could not complain of any damage he might sustain. This evidence was excluded by the presiding justice and exception taken.

The evidence was properly excluded in this action. It would tend to vary the terms of the deed which was later executed. There was no claim of any conduct in the nature of fraud. The deed was prepared by the defendant's own counsel. The deed contained all the agreement because the complete terms of the agreement were "merged" in it. The dam, or obstruction, was built by the defendant on his own land which he had purchased of the plaintiff. The defendant had a right to build any structure on his own land provided he made no unlawful use, or did no injury to the rights or property of others. The plaintiff could not complain if it was a proper and lawful use. The lot purchased by and belonging to defendant was clearly described, but the "flowage" claim he now makes, if it were valid, might, through obstruction of the water course, give additional land, or rights in other land, not described and never intended by either of the parties. No fraud is claimed. The deed is not ambiguous. There was no breach of covenant.

The defendant in his testimony indicated that he purchased the land described in the deed for the purpose of "straightening" his line, and that he received all the property that the deed called for.

The doctrine of equitable estoppel is recognized in Maine in instances where one knowingly suffers another to purchase and expend money on land under an erroneous opinion of title, without making known his claim. "It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel." It should appear that there was either actual fraud, or action equivalent to fraud, in relation to land, or that he was silent when the circumstances would impel an honest man to speak. The facts must be peculiarly within his own knowledge. If the other party has knowledge also, there is no estoppel. See *Martin v. Maine Central Railroad*, 83 Me. 100; *Gordon v. Hutchins*, 118 Me. 6.

In order to create an estoppel, the conduct, misrepresentations, or silence of the person claimed to be estopped must be made to or in the presence of a person who had no knowledge of the true state of facts, and who did not have the same means of ascertaining the truth as did the other party. *Rogers v. Street Railway*, 100 Me. 86. It is a doctrine calculated to suppress fraud and oppression. *Stubbs v. Pratt*, 85 Me. 429.

We do not find in this record or in the offer of proof the facts and circumstances necessary to create an estoppel. The presiding justice was correct in excluding the evidence offered.

During the trial the plaintiff was permitted to testify, over objections by the defendant, as to the fair market value of his property before and after the erection by the defendant of the obstruction in the water course. This was error. Our court has many times passed upon the question

of damages in cases of nuisance. The continuance or repetition of the nuisance gives rise to a new cause of action as long as the nuisance lasts. Permanent damage to real estate cannot be recovered, in this form of action, where the cause of damage may be abated or removed. Damages cannot be estimated or allowed that occur or will occur after the date of the writ. There is a distinction between stopping the flow of a stream, with consequent flooding of property of another, and waste committed on real estate. This exception must be sustained. *Goodwin and Stewart* v. *The Texas Co.*, 134 Me. 266. For the same reasons the instruction of the presiding justice that the jury might find permanent damage was erroneous, and this exception must also be sustained.

It is not necessary to consider the other exceptions of the defendant. The entry must be

*Exceptions sustained.*