ALMA I. GAMER *vs.* TOWN OF MILTON & another (and a companion case[1]).

Norfolk.    November 8, 1963. — January 7, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Negligence,* Removal of water from land. *Real Property,* Removal of water. *Practice, Civil,* New trial.

A contractor who pumped water from a pond in order to excavate gravel from the land on which the pond was located and by such pumping caused withdrawal of water from and compacting of the subsoil in neighboring land and settlement of a house on the neighboring land was liable to the neighboring landowner for negligence in failing to take reasonable precautions to prevent such injury.    [619–621]

An exception to denial of a motion for a new trial of an action heard without jury raised no question as to a ground of the motion that the general finding was against the evidence and the weight of the evidence.    [621]

In an action heard without jury, an exception to denial of a motion for a new trial on the ground that the general finding was against the law must be overruled where no error of law arising for the first time on the motion appeared.    [621]

[1] The companion case is by A. Frank Early and another against the same defendants.

Two ACTIONS OF TORT.  Writs in the Superior Court dated April 1, 1958.

The actions were heard by *Donahue*, J.

*Robert W. Cornell* for Marinucci Bros. & Co. Inc.

*John J. Murray*, Town Counsel, for the Town of Milton.

*Manuel Katz* for the plaintiffs.

SPALDING, J.  These are two actions of tort for damage to real estate owned by the plaintiffs.  The defendants are the town of Milton (town) and Marinucci Bros. & Co., Inc. (Marinucci).

The cases were referred to an auditor (findings of fact not final) and thereafter were tried to a judge.  Both the auditor and the judge found for each plaintiff against each defendant.  The case against Marinucci was tried solely on the auditor's report; the case against the town was tried on the report and other evidence.

The underlying facts common to both cases, as found by the auditor, are these:  The town is the owner of a parcel of property known as the Turner's Pond area.  The plaintiffs are the owners of residences which are adjacent to the Turner's Pond area.  On October 8, 1956, the town entered into a contract with Marinucci under which Marinucci was, among other things, to excavate and remove gravel from the Turner's Pond area.  In order to excavate and remove the gravel it undertook to remove the water from the area by pumping it out of Turner's Pond into Pine Tree Brook, whence it flowed away.  Pine Tree Brook is located between the pond and the plaintiffs' houses.  As a result of the pumping the "water level in the pond generally . . . was lowered some 24 feet from its average stand" prior to the commencement of work.  "This lowering of the water level in Turner's Pond could, in the type of sub-soil in that area, and did, cause a commensurate lowering in the ground water level throughout an area around the pond, including plaintiffs' land."  As a result of this operation water was withdrawn from the "upper levels of the sub-soil."  When water is thus withdrawn from subsoil "above which on the surface a load is resting (in this case plaintiffs' houses),

the under soil [becomes] compacted . . . [and] this occurred in the Turner's Pond area, causing settlement under plaintiffs' houses," a result that was reasonably foreseeable to both defendants. "Inasmuch as different types of soil suffer different rates of ground water depletion, varying from almost complete permeability and complete drying out, to impermeability and complete retention of ground water, it is common practice to construct simple and inexpensive devices known as observation wells in the area adjacent to the drained area (in this case it would have been on plaintiffs' land), and to determine the effect of the draining upon the adjacent land. If the readings from such observation wells indicate a sufficient loss of ground water, it is common practice to employ methods either to limit the withdrawal of ground water (such as vertical metal sheathing sunk in the ground), or to replenish the supply of the affected area (such as recharge wells, which are sunk in the area and artificially supplied with water). In this particular case the Pine Tree Brook could have been dammed up and by recharge wells . . . plus the presence of this barrier of high water might have held the ground water level in the plaintiffs' property without further precautions."

1. The question in the Marinucci case arises from the refusal of the trial judge to rule, as requested by Marinucci, that the evidence did not warrant a finding against it. We are of opinion that this request was rightly refused.

In *New York Cent. R.R.* v. *Marinucci Bros. & Co. Inc.* 337 Mass. 469, it was held that liability could be imposed on a contractor where in excavating a trench near a railroad location the contractor negligently failed to drive the sheathing in the trench to a sufficient depth, whereby water carrying silt seeped from the location into the trench and the location was undermined.

In an earlier case, *Cabot* v. *Kingman,* 166 Mass. 403, it was held by a closely divided court that liability could be imposed on a defendant who without taking the proper precautions pumped a mixture of fine sand, silt and water out of a trench, thereby drawing off a quantity of these mate-

rials from the plaintiff's adjacent land so that it settled. Three of the justices dissented. They took the view that quicksand or any flowing material should be distinguished from solids and treated as water. And they were of opinion that the "withdrawal of the support or barrier of soil to subterranean water" should not be a wrong even if the adjoining land subsides. For this position they relied on *Popplewell* v. *Hodkinson*, L. R. 4 Ex. 248.

Likewise in the cases at bar the defendants rely heavily on the *Popplewell* case and urge that they should not be liable for the effects of their acts. In the *Popplewell* case, which involved the building of a church, it was necessary for the defendant to excavate deeply and this resulted in draining water out from under the plaintiff's adjacent land. The plaintiff's land then subsided and cottages on the land were damaged. The court held that the defendant, who was not shown to be negligent, was not liable for causing the damage.[2]

However, we are of opinion that the case at bar is governed by *Cabot* v. *Kingman*, 166 Mass. 403,[3] and *New York Cent. R.R.* v. *Marinucci Bros. & Co. Inc.* 337 Mass. 469, rather than by the *Popplewell* case. In both of those cases the defendant's negligent removal of a mixture of water and soil which caused seepage from under the plaintiff's land, as a result of which the land subsided, was held to be actionable. We see no good basis to distinguish the case at bar from those cases merely because here there is no evidence of any soil in the water pumped out. See Am. Law of Property, § 28.46.

It is, of course, settled in this Commonwealth that a land-owner has absolute ownership in the subsurface percolating water in his land. He may use it as he sees fit, even if this

---

[2] For decisions both in England and in the United States, which have cited the *Popplewell* case, see *English* v. *Metropolitan Water Bd.* [1907] 1 K. B. 588, 602; *Gill* v. *Westlake*, [1910] A. C. 197, 200; *New York Continental Jewell Filtration Co.* v. *Jones*, 37 App. D. C. 511, 515; 4 A. L. R. 1104–1106; Annotation, 55 A. L. R. 1420–1421.

[3] See *Jordeson* v. *Sutton, Southcoates & Drypool Gas Co.* [1899] 2 Ch. 217, where a divided court followed the majority opinion in *Cabot* v. *Kingman* in a similar fact situation and distinguished the *Popplewell* case.

results in a loss of water in his neighbor's land. *Greenleaf* v. *Francis,* 18 Pick. 117. *Davis* v. *Spaulding,* 157 Mass. 431. However, in the cases at bar the issue is whether Marinucci's procedures in excavating and in pumping out the water were negligent. If the plaintiffs can recover it must be on the basis of the negligent manner in which this work was done. Such negligence we think was established by the findings of the auditor. He found that Marinucci was negligent in not taking the proper precautions to protect the plaintiffs. It could have dug observation holes. It also could have sheathed its excavations and could have used recharge wells. The liability, then, lies in the failure to take reasonable precautions to protect the plaintiffs' adjacent land[4] and does not involve questions of the rights of ownership and use of water. We are of opinion that there was evidence sufficient to establish liability on the part of Marinucci and its request was rightly refused.

2. The case against the town was based on the auditor's report and other evidence. The town brings the case here solely on its exception to the denial of its motion for a new trial. There was no error. With respect to a case tried to a judge, the statute, G. L. c. 231, § 129, gives but two grounds for filing a motion for a new trial as of right: mistake of law and newly discovered evidence. The town's motion was based on the grounds that the finding was against (1) the evidence, (2) the weight of the evidence, and (3) the law. Of these the only ground that need concern us is the third and with respect to that "[t]here was no error of law arising for the first time in the hearing of the motion." *Scano, petitioner,* 338 Mass. 7, 9.

*Exceptions overruled.*

---

[4] This view finds support in *Bissell* v. *Ford,* 176 Mich. 64, where on facts somewhat similar liability was imposed.