1999 ME 63

**Sewall MADDOCKS et al.**

v.

**Elbridge GILES d/b/a E.A. Giles & Sons.**

Supreme Judicial Court of Maine.

Argued April 5, 1999.
Decided April 26, 1999.

David J. Van Dyke, Paul F. Macri (orally), Berman & Simmons, P.A., Lewiston, for the plaintiffs.

Gerard O. Fournier (orally), Portland, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] Sewall and Janice Maddocks appeal from the entry of judgment in the Superior Court (Lincoln County, *Bradford, J.*) after a jury verdict finding that Elbridge Giles' excavation activities on his land did not interfere with the flow of an underground watercourse benefitting the Maddockses' land. The Maddockses argue that the trial court erred by instructing the jury on the absolute dominion rule, and they urge us to adopt a new rule governing groundwater usage. We decline to adopt a new rule, and we affirm the judgment.

[¶ 2] The Maddockses own property adjacent to a gravel pit owned by Giles. The Maddockses do not live on this property; in fact, there is no house on the property. An underground spring that produced large quantities of water has historically flowed beneath the Maddockses' property. In 1994 the Maddockses filed a complaint alleging that Giles' excavation activities at the gravel pit caused the spring to run dry. Giles moved to dismiss on the ground that there is no cause of action for the diminution or exhaustion of a neighbor's spring by the lawful excavation of land through which underground water percolates. The motion was granted, but we vacated the dismissal in *Maddocks v. Giles*, 686 A.2d 1069 (Me.1996) [hereinafter *Maddocks I* ]. We recognized the general rule that a person may use his land as he pleases for lawful purposes, but we noted that a landowner may not disrupt a watercourse to the injury of neighboring landowners. *See id.* at 1071. Because we concluded that the complaint sufficiently alleged that Giles' excavation activities disrupted a watercourse running beneath Giles' property to the Maddockses' spring, we remanded for further proceedings. *See id.*

[¶ 3] At trial, the Maddockses testified that Giles' excavation activities, including dewatering the gravel pit to allow ever-deeper digging, caused the spring to become exhausted. Their expert hydrogeologist conceded that the water underneath Giles' land flowing into the spring is presumed to be percolating,[1] but added that percolating wa-

---

1. Most underground water gradually percolates through the various strata and is not flowing in a watercourse. *See* 3 WATERS AND WATER RIGHTS § 20.07(a)(4) (Robert E. Beck ed., 1991). This

ter can constitute a watercourse because there is a general flow and predictable course. Giles' expert hydrogeologist testified that the water feeding the spring was percolating water and that it could not constitute a watercourse because it has no sides or bed, as a surface watercourse does. He further testified that underground watercourses do not exist in Maine, as these appear primarily in areas of limestone deposits.

[¶ 4] The absolute dominion rule, which has been the law in this jurisdiction for a over a century, is reflected in the instructions given to the jury in this case.[2] The court gave the jury a verdict form that required it to make a preliminary determination of whether the water feeding the spring was a watercourse. The judge instructed the jury to go no further if it found the aquifer on Giles' land was not a watercourse. The jury returned a unanimous verdict that the source aquifer for the spring was not a watercourse, and judgment was granted to Giles.

■ [¶ 5] The sole issue presented on appeal is whether we should depart from the common law absolute dominion rule and adopt the groundwater use rules set forth in RESTATEMENT (SECOND) OF TORTS § 858 (1979).[3] The absolute dominion rule is based on the premise that groundwater is the absolute property of the owner of the land, just like the rocks and soil that compose it. *See* ROGER A. CUNNINGHAM, ET AL., THE LAW OF PROPERTY § 7.5 (1984). In *Chase v. Silverstone,* 62 Me. 175, 183–84 (1873), we held that a landowner who digs a well on his own property, thereby causing percolating water to a neighbor's spring to dry up, is not liable for damages. The rule was affirmed in *Chesley v. King,* 74 Me. 164, 170 (1882):

[O]ne may, for the convenience of himself or the improvement of his property, dig a well or make other excavations within his own bounds, and will be subject to no claim for damages although the effect may be to cut off and divert the water which finds its way through hidden veins which feed the well or spring of his neighbor.

■ [¶ 6] As we noted in *Maddocks I,* there is a limit to this rule of unfettered capture: a landowner cannot stop or divert the flow of a watercourse to the injury of his neighbor.[4] *See Morrison v. Bucksport & Bangor R.R. Co.,* 67 Me. 353, 356 (1877). The scope of this exception, however, is limited by the narrow definition of a watercourse:

To constitute a water course, it must appear that the water usually flows in a particular direction; and by a regular channel, having a bed with banks and

---

has led to a judicial presumption that underground water is percolating, and therefore the party asserting the existence of an underground stream has the burden of proof. *See id.* § 20.07(a)(2).

2. The trial court instructed the jury that a property owner may use his land as he pleases for all lawful purposes but the owner may not interrupt or interfere with a watercourse benefitting another's land, whether that watercourse is above ground or below ground. The court further instructed the jury that a property owner could dig a well or make other excavations and not be subject to a claim for damages even though the effect of the excavation was to cut off and divert water which percolates through the ground or hidden veins to feed the neighbor's well or spring. The court defined a watercourse as a course of water flowing in a particular direction by a regular channel having a bed with banks and sides and usually discharging itself into some other body or stream of water. The court added that although it must have a well-defined and substantial existence, a watercourse need not flow continuously or never be dry.

3. Section 858 of the Restatement (Second) of Torts states:

§ 858. Liability for Use of Ground Water.

(1) A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another, unless

(a) the withdrawal of ground water unreasonably causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

(b) the withdrawal of ground water exceeds the proprietor's reasonable share of the annual supply or total store of ground water, or

(c) the withdrawal of the ground water has a direct and substantial effect upon a watercourse or lake and unreasonably causes harm to a person entitled to the use of its water.

(2) The determination of liability under clauses (a), (b), and (c) of Subsection (1) is governed by the principles stated in §§ 850 to 857.

4. An additional exception prevents a landowner from maliciously wasting water to the detriment of a neighbor. *See Chesley,* 74 Me. at 177.

sides; and (usually) discharging itself into some other body or stream of water. It may sometimes be dry. It need not flow continuously; but it must have a well defined and substantial existence.

*Id.; see also Card v. Nickerson*, 150 Me. 89, 91, 104 A.2d 427, 429 (1954); *Johnson v. Whitten*, 384 A.2d 698, 701 (Me.1978).

[¶ 7] The absolute dominion rule is now the minority rule in the United States. A few states in addition to Maine continue to recognize the rule. *See Wiggins v. Brazil Coal & Clay Corp.*, 452 N.E.2d 958, 964 (Ind.1983); *Gamer v. Town of Milton*, 346 Mass. 617, 195 N.E.2d 65, 67 (1964); *Friendswood Dev. Co. v. Smith–Southwest Indus., Inc.*, 576 S.W.2d 21, 27 (Tex.1978); *White River Chair Co. v. Connecticut River Power Co. of N.H.*, 105 Vt. 24, 162 A. 859, 871 (1932).

█ [¶ 8] Most jurisdictions have adopted the reasonable use, or American, rule or some variation of it.[5] *See* CUNNINGHAM at § 7.5. A representative sample of these jurisdictions includes *Adams v. Lang*, 553 So.2d 89, 91 (Ala.1989); *Bassett v. Salisbury Mfg. Co.*, 43 N.H. (6 Chandler) 569, 579 (1862); *Rothrauff v. Sinking Spring Water Co.*, 339 Pa. 129, 14 A.2d 87, 90 (1940); *Nashville C. & St. L. Ry. v. Rickert*, 19 Tenn.App. 446, 89 S.W.2d 889, 896 (1935). The reasonable use rule requires that all uses of the water on the land from which it is extracted must be reasonable. *See* 6 THOMPSON ON REAL PROPERTY § 50.1 1(a) and (d) (David A. Thomas ed., 1994). The usual interpretation of reasonable simply prevents the landowner from wasting the water or from transporting it off of the land for use elsewhere. *See* CUNNINGHAM at § 7.5.

[¶ 9] The Restatement approach abandons the common law distinction between underground watercourses and percolating water. *See* RESTATEMENT (SECOND) OF TORTS § 845. It provides that a landowner who withdraws groundwater, whether in a watercourse or percolating, and "uses it for a beneficial purpose is not subject to liability for interference with the use of water by another." *Id.* § 858(1). If the withdrawal, however, unrea-

sonably causes harm to a neighbor by lowering the water table, exceeds the owner's reasonable share, or has a direct effect on a watercourse and unreasonably causes harm to one entitled to that water, then the owner may be liable. *See id.* The Restatement rule is derived from principles of reasonable use, but it differs from its predecessors. The reasonable use rule, of which there are variations, usually only requires that water not be wasted, but the "Restatement balances the equities and hardships between competing users." Linda A. Malone, *The Necessary Interrelationship Between Land Use and Preservation of Groundwater Resources*, 9 UCLA J. ENVTL. L. & POL'Y 1, 11 (1990). Three states have adopted the Restatement approach. *See Cline v. American Aggregates Corp.*, 15 Ohio St.3d 384, 474 N.E.2d 324, 328 (1984); *Maerz v. United States Steel Corp.*, 116 Mich.App. 710, 323 N.W.2d 524, 530 (1982); *State v. Michels Pipeline Constr., Inc.*, 63 Wis.2d 278, 217 N.W.2d 339, 345 (1974) (adopting now-altered RESTATEMENT (SECOND) OF TORTS, Tentative Draft No. 17, § 858 (1971)).

[¶ 10] The Maddockses argue that we should abandon the absolute dominion rule because it is based upon faulty science. It is generally accepted that the absolute dominion rule was established because courts did not understand how water flows underground. Instead, courts looked to established principles of property law that would allow them to resolve disputes without having to probe beneath the surface. *See* 1 WATERS AND WATER RIGHTS § 4.05(c) (Robert E. Beck ed., 1991). In rejecting the absolute dominion rule, several courts have given modern science as a basis for abandoning the old rule. *See e.g., Cline*, 474 N.E.2d at 328 (Holmes, J. concurring).

█ [¶ 11] We decline to abandon the absolute dominion rule. First, we are not convinced that the absolute dominion rule is the wrong rule for Maine. We recognize that we are not bound by the doctrine of stare decisis when the underpinnings of the

---

**5.** A few jurisdictions, notably California, have adopted a rule of correlative rights as a variant on reasonable use principles. *See City of Pasa-* *dena v. City of Alhambra*, 33 Cal.2d 908, 207 P.2d 17, 28–29 (1949); *Jones v. Oz–Ark–Val Poultry Co.*, 228 Ark. 76, 306 S.W.2d 111, 115 (1957).

previous decisions are disproved and when the conditions of society have changed so that the prior law no longer fulfills a need and is counterproductive. *See Myrick v. James*, 444 A.2d 987, 998 (Me.1982). Although modern science has enlightened our knowledge of groundwater, this does not mean that the rule itself has interfered with water use or has caused the development of unwise water policy. The Maddockses did not present evidence or point to any studies showing that the absolute dominion rule has not functioned well in Maine. Furthermore, for over a century landowners in Maine have relied on the absolute dominion rule. *See Friendswood Dev. Co.*, 576 S.W.2d at 29 (citing the reliance of landowners on the absolute dominion rule as a significant factor in upholding the old rule). In the absence of reliable information that the absolute dominion rule is counterproductive and a hindrance to achieving justice, we will not depart from our prior decisions.

[¶ 12] Second, we are not persuaded that we, as opposed to the Legislature, should be weighing the heavy policy considerations involved in this issue, not the least of which is the reliance of land owners on the present property laws. The Legislature can study the ramifications of a change in policy; it can call upon experts to give their opinions as to the best water policy for Maine; and it can survey Maine's water needs. We conclude that at this time the question of whether to depart from our common law on groundwater issues is best left to the Legislature.

[¶ 13] Finally, we are further constrained in making the requested change because the Legislature has taken action in this area by creating the Water Resources Management Board to do a comprehensive study of water law in Maine. *See* 5 M.R.S.A. § 6301 (Supp. 1989), *repealed by* 5 M.R.S.A. § 6306 (Supp. 1989). The Board reported to the Legislature and suggested that it adopt reasonable use principles. *See* Maine Water Resources Management Board, Board Findings and Recommendations 5 (Feb.1991). The Legislature chose to leave the common law as it currently stands.[6]

[¶ 14] Because the absolute dominion rule is the law in Maine governing the issue in this case and because the trial court correctly instructed the jury on the absolute dominion rule, we affirm the verdict.

The entry is

Judgment affirmed.

---

6. The Legislature had earlier enacted another exception to the absolute dominion rule by creating liability when a person withdraws groundwater in excess of household purposes for a single-family home and the withdrawal interferes with the preexisting household use of groundwater. *See* 38 M.R.S.A. § 404(1) and (2) (1989). This statute is inapplicable to the Maddockses because they did not have a preexisting household use of the spring water, and it is their desire to make a commercial use of the spring water.