MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 28
Docket:       Ken-15-29
Argued:       December 10, 2015
Decided:      February 11, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HJELM, JJ.

ESTATE OF PAUL R. GALIPEAU

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

MEAD, J.

[¶1]  The Estate of Paul R. Galipeau (Estate) appeals from a summary judgment entered by the Superior Court (Kennebec County, *Murphy, J.*) in favor of State Farm Mutual Automobile Insurance Company (State Farm) on the Estate's complaint for wrongful denial of coverage concerning three of four vehicle insurance policies owned by Paul Galipeau at the time of his death.  The Estate contends that State Farm was obligated to pay the uninsured motorist (UM) coverage limit of each of the four policies, not just the UM coverage limit of the policy naming the motorcycle Galipeau was riding when he was involved in a fatal accident.  State Farm contends that the court correctly ruled that coverage under the three non-motorcycle policies was precluded by an "other-owned-vehicle" exclusion that each policy contained.  It further asserts that coverage was precluded

by an "anti-stacking" provision in the policies, the applicability of which the Estate disputes. We affirm the judgment.

## I. BACKGROUND

[¶2] The summary judgment record contains the following evidence, viewed in the light most favorable to the Estate as the non-moving party. *See Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 2, 126 A.3d 1145. On August 15, 2012, Paul Galipeau was killed in a motor vehicle accident while riding his motorcycle. With State Farm's consent, the Estate settled a claim against the tortfeasor for $50,000, the limit of the tortfeasor's liability insurance policy.

[¶3] Galipeau and his wife Judith, the personal representative of his estate, were insured under four vehicle policies issued by State Farm: one on the motorcycle that Paul was riding when the accident occurred, and the others covering three different vehicles. Each of the policies provided UM coverage with a per-person limit of $100,000. The Estate demanded $350,000 from State Farm, representing the aggregate of each policy's UM coverage limit, less the $50,000 recovered from the tortfeasor. State Farm paid the $50,000 differential between the motorcycle policy UM limit and the $50,000 already recovered by the Estate, and otherwise refused the demand.

[¶4]   The parties dispute whether State Farm Policy Form 9819B or the earlier Policy Form 9819A was in effect at the time of the accident.  Each contains an "other-owned-vehicle exclusion" as follows.

[¶5]  Concerning UM coverage, Form 9819B provides:

THERE IS NO COVERAGE:

. . . .

2.  FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

    a.   WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

Pursuant to the policy definitions, "*Your car* means the vehicle shown under 'YOUR CAR' on the Declarations Page."  Each of the four policies owned by Galipeau had a separate declarations page, each listing a different vehicle than the others.  None of the three policies under which State Farm refused to pay listed the motorcycle on the declarations page.

[¶6]  Form 9819A provided:

THERE IS NO COVERAGE:

. . . .

2.  FOR *BODILY INJURY* TO AN *INSURED*:

    a.  WHILE *OCCUPYING* A MOTOR VEHICLE OWNED BY OR LEASED TO *YOU*, *YOUR SPOUSE*, OR ANY *RELATIVE* IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

4

In addition, Form 9819B contains an "anti-stacking" provision that Form 9819A did not.

[¶7]  In April 2013, the Estate filed a complaint against State Farm alleging breach of the three policies on which it refused payment, seeking damages of $300,000 as part of "compensatory damages . . . in excess of $400,000." State Farm moved for summary judgment on the grounds that coverage was precluded by (1) the other-owned-vehicle exclusion; and (2) the anti-stacking provision, which State Farm asserted was effective against Galipeau when the accident occurred.  The Estate moved for partial summary judgment on the coverage issue, asserting the same grounds it advances in this appeal.

[¶8]  Following a hearing, the court concluded that the other-owned-vehicle exclusion precluded coverage under the three non-motorcycle policies.  For that reason, the court entered summary judgment for State Farm and denied the Estate's motion for partial summary judgment.  The court did not reach the issue of whether the anti-stacking provision also applied to the same end.  The Estate appealed.

## II.  DISCUSSION

[¶9]   The Estate contends that State Farm was not entitled to summary judgment because (1) other-owned-vehicle exclusions violate Maine's UM statute, 24-A M.R.S. § 2902 (2015), notwithstanding our long-standing precedent to the contrary; or (2) State Farm's other-owned-vehicle exclusion does not apply in this

case because Galipeau paid a premium for UM coverage on each of his four State Farm policies. "We review a grant of summary judgment de novo, viewing the summary judgment record in the light most favorable to the nonprevailing party to determine whether it demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Allen v. McCann*, 2015 ME 84, ¶ 8, 120 A.3d 90 (quotation marks omitted).

[¶10] Unless they are invalid, either Form 9819A or Form 9819B afforded Galipeau UM coverage under the State Farm policy that listed the motorcycle on the declarations page, but not under the three policies that did not list the motorcycle. Concerning the three non-motorcycle policies, under Form 9819A the motorcycle was not a vehicle "insured for this coverage under this policy," and under Form 9819B the motorcycle did not meet the definition of "your car or a newly acquired car."

[¶11] The Estate recognizes that our precedent is clear. Unless overruled, it compels a conclusion that the other-owned-vehicle exclusion at issue in this case was valid. As recently as 2014, we reaffirmed the applicability of an other-owned-vehicle exclusion, saying, "We are unpersuaded by the . . . argument that we should find . . . other-owned-vehicle exclusions unenforceable." *Estate of Lewis v. Concord Gen. Mut. Ins. Co.*, 2014 ME 34, ¶ 12 & n.9, 87 A.3d 732. Our statement in *Estate of Lewis* was supported by citations to our decisions dating

6

back some thirty years.[1] In one of the cited cases we discussed with approval a decision of the First Circuit Court of Appeals, in which that court, construing Maine law, upheld the validity of an other-owned-vehicle exclusion in saying that "the applicability of [the] exclusion was 'nose-on-the-face plain.'" *Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶ 12, 942 A.2d 663 (quoting *Maurice v. State Farm Mut. Auto. Ins. Co.*, 235 F.3d 7, 9-10 (1st Cir. 2000)).

[¶12] The Estate invites us to depart from our clear and long-standing precedent by inviting us to change Maine law. Its primary rationale for doing so rests on its assertion that finding other-owned-vehicle exclusions to be invalid is a growing national trend among courts, an assertion that State Farm disputes. A review of the authorities cited by the parties shows that those authorities disagree as to the existence or extent of a "national trend" concerning this area of law when state courts are called upon to interpret their own UM statutes.

[¶13] The authors of the treatise *Uninsured and Underinsured Motorist Insurance* reference courts in numerous jurisdictions that have upheld insurance policies containing "other owned vehicle/household member" exclusions. 1 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist*

---

[1] *See Hall v. Patriot Mut. Ins. Co.*, 2007 ME 104, ¶¶ 11-12, 942 A.2d 663; *Cash v. Green Mountain Ins. Co.*, 644 A.2d 456, 457-58 (Me. 1994); *Bear v. U.S. Fid. & Guar. Co.*, 519 A.2d 180, 182 (Me. 1986); *Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139, 1142 (Me. 1986). *See also Hare v. Lumbermens Mut. Cas. Co.*, 471 A.2d 1041, 1043 (Me. 1984).

*Insurance* § 4.19(C) (3d ed. 2005). That treatise also recognizes that a majority of jurisdictions have held that unless such exclusions are specifically authorized by the state's uninsured motorist legislation, the exclusions are against public policy and are therefore void. *Id.* § 4.19(E). In many of the states where a court has held the exclusions to be against public policy, the state's legislature has subsequently amended the uninsured motorist laws to allow such exclusions. *See id.* n.35. *See also* Janet Boeth Jones, Annotation, *Uninsured Motorist Coverage: Validity of Exclusion of Injuries Sustained by Insured While Occupying "Owned" Vehicle Not Insured by Policy*, 30 A.L.R. 4th 172, §§ 3(a), 3(b) (2014) (collecting cases in which other-owned-vehicle exclusions were held to be valid, and cases where such exclusions were held to be invalid).

[¶14] Furthermore, we note that our well-settled acceptance of other-owned-vehicle exclusions has a logical underpinning, in that a person occupying a vehicle that he or she owns determines how much UM coverage to carry on that vehicle. Accordingly, the vehicle owner can engage in a cost/benefit analysis and purchase a self-selected amount of UM coverage that the owner deems appropriate should he or she be injured in an accident in that vehicle. Given that the validity of other-owned-vehicle exclusions has been clear in this state for decades, it would fundamentally alter the bargain entered into by the Galipeaus and State Farm when the Galipeaus purchased UM coverage to hold that although they

made the decision to pay for $100,000 in coverage, State Farm is now liable to pay the Estate up to $400,000 in benefits.

[¶15] For these reasons, we decline the Estate's invitation. Whatever other states may do pursuant to their statutes, the proper construction of 24-A M.R.S. § 2902 is a matter for us to determine. *See Gardner v. Day*, 95 Me. 558, 560, 50 A. 892 (1901) (stating that when there is an unresolved question concerning a state statute "it becomes our duty to construe the statute and to ascertain its true intent and meaning"). We recently reaffirmed the validity of other-owned-vehicle exclusions, *Estate of Lewis*, 2014 ME 34, ¶ 12 & n.9, 87 A.3d 732, and we see no compelling reason to depart from the principle of stare decisis and declare an abrupt reversal of our long-standing jurisprudence. *See Quirion v. Veilleux*, 2013 ME 50, ¶ 6, 65 A.3d 1287 ("Guided by *stare decisis*, we will apply rules articulated in our precedents unless the passage of time and changes in conditions justify reexamining the law stated in our prior opinion and reaching a different result." (quotation marks omitted)); *Maddocks v. Giles*, 1999 ME 63, ¶ 11, 728 A.2d 150 (stating that "when the underpinnings of [] previous decisions are disproved" the Law Court is not constrained by stare decisis). If a change in settled Maine UM insurance law is warranted on public policy grounds, then that, absent a more compelling rationale than the one presented here, is an argument best addressed to the Legislature. *See Maddocks*, 1999 ME 63, ¶ 12, 728 A.2d 150

(stating that concerning some issues it "is best left to the Legislature" to weigh "heavy policy considerations" involved in a potential change in the law).

[¶16]  Concerning the Estate's second contention, that the Galipeaus' payment of UM premiums on each of the four policies compels coverage for this accident under all of them, we rejected that argument in a case involving facts very similar to these.  *See Gross v. Green Mountain Ins. Co.*, 506 A.2d 1139 (Me. 1986).  In *Gross*, the decedent was killed in a collision with another vehicle while riding his motorcycle; at the time he was insured under two separate Green Mountain policies, for which he paid separate premiums, one naming the motorcycle and the other naming two automobiles.  *Id.* at 1140.  Concerning the plaintiff estate's argument that an other-owned-vehicle exclusion in the policies violated the UM statute and was against public policy, we said:

> As we noted in *Dufour v. Metropolitan Property and Liability Insurance Company*, 438 A.2d 1290, 1292 (Me. 1982), the purpose of the uninsured motorist statute is to afford to each owner of an automobile liability insurance policy a minimum standard of protection against the uninsured motorist.  In *Dufour*, we concluded that our uninsured motorist statute does not require "stacking" when two or more cars are insured under a single policy, even though separate premiums are paid, so long as the insurance contract clearly and unambiguously restricts coverage to a specified amount greater than the statutory minimum. . . . [T]he Plaintiff fails to offer any rational basis for allowing a motorist who has insured two vehicles under two separate policies to "stack" uninsured motorist coverage when a motorist who has insured two vehicles under a single policy, yet pays two premiums, cannot.

10

*Id.* at 1142.  The same reasoning is applicable here, yielding the same result.

[¶17]  Because we conclude that the Superior Court did not err in entering summary judgment for State Farm on the ground that the other-owned-vehicle exclusion in the Galipeaus' four policies precluded coverage under the three non-motorcycle policies, we do not reach the Estate's alternative argument that the anti-stacking provision in Form 9819B was ineffective.

The entry is:

>    Judgment affirmed.

---

**On the briefs:**

>    Steven D. Silin, Esq., and Robert H. Furbish, Esq., Berman & Simmons, P.A., Lewiston, for appellant Estate of Paul R. Galipeau

>    J. William Druary, Jr., Esq., and Gregory M. Patient, Esq., Marden Dubord, Bernier & Stevens, PA LLC, Waterville, for appellee State Farm Mutual Automobile Insurance Company

**At oral argument:**

>    Robert H. Furbish, Esq., for appellant Estate of Paul R. Galipeau

>    Gregory M. Patient, Esq., for appellee State Farm Mutual Automobile Insurance Company